# EXHIBIT A

# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

11/12/2025 1:36:36 PM

Clerk of the Superior Court
By M. Ramirez      ,Deputy Clerk

1  Zvi "Hershy" Silver, SBN 234855
   hsilver@silverlawfirm.com
2  **SILVER LAW FIRM, APC**
   401 W A Street, Suite 1150
3  San Diego, CA 92101
   Tel: (619) 231-1600
4  Fax: (619) 231-1616
5
   Attorney for Plaintiff ABC Industrial Services, Inc.
6

7

8           **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9           **COUNTY OF SAN DIEGO, CENTRAL CIVIL COURTHOUSE**

| | |
|---|---|
| ABC INDUSTRIAL SERVICES, INC., a California Corporation,<br><br>            Plaintiff,<br><br>v.<br><br>AXIS INSURANCE COMPANY, an Illinois corporation doing business in the State of California; AXIS SURPLUS INSURANCE COMPANY, an unknown Entity; and DOES 1 through 20, inclusive,<br><br>            Defendants. | Case No.   25CU060777C<br><br>COMPLAINT FOR<br><br>1.  Breach of Contract<br>2.  Breach of the Implied Obligation of Good Faith and Fair Dealing—Failure or Delay in Payment<br>3.  Bad Faith (Third Party)—Failure to Properly Investigate Claim<br>4.  Bad Faith (Third Party)--Unreasonable Failure to Defend<br><br>Unlimited Jurisdiction (amount exceeds $35,000)<br><br>**Jury trial demanded** |

        Now comes Plaintiff ABC Industrial Services, Inc. and alleges as follows:

**I.      GENERAL ALLEGATIONS**

   **A.      The Parties**

        1.      Plaintiff ABC Industrial Services, Inc., ("ABC") is, and at all times mentioned herein

is, a corporation incorporated under the laws of the state of California, with its principal place of

business in the county of San Diego, state of California.

        2.      Plaintiff is informed and believes, and thereon alleges, that Defendant AXIS

Insurance Company ("AIC") is an Illinois corporation, authorized to do and doing business in the

State of California, including in San Diego County.

| COMPLAINT | Page 1 |
|---|---|

3.     Plaintiff is informed and believes, and thereon alleges, that Defendant AXIS Surplus Insurance Company ("ASIC") is an unknown entity incorporated in an state that Plaintiff does not know of yet.

4.     Plaintiff is informed and believes, and on that basis alleges that the fictitiously-named Defendants sued herein as DOES 1 through 20, and each of them, are in some manner responsible or legally liable for the actions, events, transactions, and circumstances alleged herein. The true names and capacities of such fictitiously-named Defendants, whether individual, corporate, or otherwise, are presently unknown to Plaintiff, and Plaintiff will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously-named Defendants when same have been ascertained.

5.     Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein, there existed a unity of interest and ownership between Defendants and each of them such that any individuality and separateness between Defendants ceased to exist. Defendants and each of them were the successors-in-interest and/or alter egos of each other, and each of them, in that they purchased, controlled, dominated, and operated each other without any separate identity, commingled funds, observation of formalities, or other manner of division. To continue maintaining the facade of a separate and individual existence between and among Defendants, and each of them, would serve to perpetrate a fraud and injustice.

## I.     VENUE AND JURISDICTION

6.     This Court has jurisdiction because the contract was entered in San Diego County, was to be performed in San Diego County, and was an insurance agreement to protect a business in the County of San Diego.

7.     Jurisdiction is proper because the amount in controversy exceeds the Court's jurisdictional minimum.

## II.     FACTUAL BACKGROUND

8.     On or about October 25, 2021, AIC and/or ASIC (collectively "AIC/ASIC") and ABC entered into a written agreement for AIC/ASIC to provide insurance coverage for ABC ("Policy"). A true and correct copy of the Policy is attached hereto as Exhibit 1.

COMPLAINT                                                                                              Page 2

9.     On or about October 29, 2021, an accident occurred at or near the promises of ABC where a wall that was built by ABC and situated on ABC's property fell over onto the public right of way and crushed and caused damages to a Lincoln Navigator ("Navigator") parked at or near the property of ABC ("Incident"). The Navigator was owned by Joseph Quartuccio ("Quartuccio").

10.     Thereafter, Quartuccio made a claim against ABC and AIC/ASIC in the amount of approximately $80,000 ("Claim" or "Loss"). A true and correct copy of the Claim is attached hereto as Exhibit 2.

11.     On October 25, 2024, Joseph Quartuccio filed a lawsuit in the Superior Court of San Diego, Central Division, with the case number of 24CU019425C against ABC and others for the Loss suffered in the Incident ("Navigator Action"). A true and correct copy of the Complaint in the Navigator Action is attached hereto as Exhibit 3.

12.     ABC tendered Quartuccio's Claim for the Incident to AIC/ASIC and asked AIC/ASIC to both (i) cover the Claim; (ii) investigate the Claim; and (iii) to pay for the legal costs to defend ABC in the Navigator Action.

13.     AIC/ASIC denied coverage for the Claim.

14.     AIC/ASIC also did not properly investigate the Claim.

15.     AIC/ASIC also refused to provide ABC with legal counsel or pay for the cost for ABC to defend ABC in the Navigator Action, forcing ABC to retain its own counsel to defend the Navigator Action.

16.     On or about September 26, 2025, ABC settled Quartuccio's Claim for the Incident in the amount $80,000.00

17.     Additionally, ABC incurred substantial attorney's fees and costs in the defense of the Navigator Action, in an amount estimated to be in excess of $50,000.00; the exact amount will be shown at trial.

COMPLAINT                                                                                    Page 3

## III.    CAUSES OF ACTION

### A.    FIRST CAUSE OF ACTION:
**Breach of Contract**
**(Against AIC/ASIC and DOES 1 through 20)**

7.    Plaintiff re-alleges and incorporates herein, by reference, all the preceding paragraphs as though fully set forth at this point.

8.    On or about October 25, 2021, AIC/ASIC and ABC entered the Policy.

9.    ABC performed its obligations in accordance with the terms of the Policy.

10.    That ABC suffered a Loss, i.e. the Incident, all of which was covered under an the Policy with AIC/ASIC.

7.    The Incident was a covered Claim under the Policy.

8.    AIC/ASIC were notified of the Incident, Claim, and Loss.

9.    Within the last four years, AIC/ASIC breached the terms of the Policy by (i) not providing insurance coverage for the Incident, Claim, and Loss.

10.    The amount of the covered Loss and Claim was $80,000.

11.    Additionally, ABC incurred substantial attorney's fees and costs in the defense of the Navigator Action, in an amount estimated to be in excess of $50,000.00; the exact amount will be shown at trial.

12.    As a result of AIC/ASIC's breach of the Policy; ABC has suffered, and will continue to suffer, monetary damages in an amount in excess of $50,000.00; the exact amount will be proven at the time of trial.

### B.    SECOND CAUSE OF ACTION:
**Breach of the Implied Obligation of Good Faith and Fair Dealing —Failure or Delay in Payment (CACI 2331) (Against All Defendants)**

13.    Plaintiff re-alleges and incorporates herein, by reference, all the preceding paragraphs as though fully set forth at this point.

14.    ABC suffered a Loss and/or Claim covered under the Policy.

15.    AIC/ASIC was notified of the Loss and/or Claim arising out of the Incident.

16.    AIC/ASIC unreasonably failed to pay Policy benefits.

17.    ABC was harmed.

COMPLAINT | Page 4

18.    AIC/ASIC's failure to pay Policy benefits was a substantial factor in causing ABC's harm.

19.    The aforementioned acts of AIC/ASIC, and Does 1-20 were willful, malicious, oppressive, and fraudulent in that they were undertaken with the purpose of wrongfully harming Plaintiff, entitling Plaintiff to an award of punitive damages in a sufficient amount to punish AIC/ASIC, and Does 1-20 for their intentional acts and to deter such activity in the future.

20.    The oppression, malice, or fraud by the agents of AIC/ASIC, and Does 1-20 were done on behalf of AIC/ASIC, who authorized or ratified such conduct by an officer, director, or managing agent of AIC/ASIC.  Plaintiff is therefore entitled to punitive damages against AIC/ASIC in a sufficient amount to make an example of punishing AIC/ASIC, and deter future fraudulent, oppressive, and malicious misconduct in an amount to be determined at trial.

**C.    THIRD CAUSE OF ACTION:**
**Bad Faith (Third Party)— Failure to Properly Investigate Claim (CACI 2332)**

21.    Plaintiff re-alleges and incorporates herein, by reference, all the preceding paragraphs as though fully set forth at this point.

22.    ABC suffered a Loss and/or Claim covered under a Policy issued by AIC/ASIC.

23.    ABC properly presented a Claim to AIC/ASIC to be compensated for the Loss and/or Claim .

24.    AIC/ASIC failed to conduct a full, fair, prompt, and thorough investigation of all of the bases of ABC's Claim and the Loss and/or Claim.

25.    ABC was harmed.

26.    AIC/ASIC's failure to properly investigate the Loss and/or Claim was a substantial factor in causing ABC's harm.

27.    As a result of AIC/ASIC's actions alleged herein; ABC has suffered, and will continue to suffer, monetary damages in an amount in excess of $35,000.00; the exact amount will be proven at the time of trial.

28.    The aforementioned acts of AIC/ASIC, and Does 1-20 were willful, malicious, oppressive, and fraudulent in that they were undertaken with the purpose of wrongfully harming

COMPLAINT                                                                              Page 5

Plaintiff, entitling Plaintiff to an award of punitive damages in a sufficient amount to punish AIC/ASIC, and Does 1-20 for their intentional acts and to deter such activity in the future.

29.    The oppression, malice, or fraud by the agents of AIC/ASIC, and Does 1-20 were done on behalf of AIC/ASIC, who authorized or ratified such conduct by an officer, director, or managing agent of AIC/ASIC.  Plaintiff is therefore entitled to punitive damages against AIC/ASIC in a sufficient amount to make an example of punishing AIC/ASIC, and deter future fraudulent, oppressive, and malicious misconduct in an amount to be determined at trial.

**D.    FOURTH CAUSE OF ACTION:**
**Bad Faith (Third Party)—Unreasonable Failure to Defend (CACI 2336)**

30.    Plaintiff re-alleges and incorporates herein, by reference, all the preceding paragraphs as though fully set forth at this point.

31.    ABC was insured under the Policy with AIC/ASIC.

32.    A lawsuit was brought against ABC.

33.    ABC gave AIC/ASIC timely notice that it had been sued.

34.    AIC/ASIC, unreasonably, that is, without proper cause, failed to defend ABC against the lawsuit.

35.    ABC was harmed.

36.    AIC/ASIC's conduct was a substantial factor in causing ABC's harm.

37.    As a result of AIC/ASIC's actions alleged herein; ABC has suffered, and will continue to suffer, monetary damages in an amount in excess of $35,000.00; the exact amount will be proven at the time of trial.

38.    The aforementioned acts of AIC/ASIC, and Does 1-20 were willful, malicious, oppressive, and fraudulent in that they were undertaken with the purpose of wrongfully harming Plaintiff, entitling Plaintiff to an award of punitive damages in a sufficient amount to punish AIC/ASIC, and Does 1-20 for their intentional acts and to deter such activity in the future.

39.    The oppression, malice, or fraud by the agents of AIC/ASIC, and Does 1-20 were done on behalf of AIC/ASIC, who authorized or ratified such conduct by an officer, director, or managing agent of AIC/ASIC.  Plaintiff is therefore entitled to punitive damages against AIC/ASIC in a

---

COMPLAINT

1  sufficient amount to make an example of punishing AIC/ASIC, and deter future fraudulent,

2  oppressive, and malicious misconduct in an amount to be determined at trial.

3  **II.    PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiff prays for judgment as against Defendants, and each of them, as

5  follows:

6  On all causes of action:

7      1.    For damages in an amount according to proof at trial but in an amount greater than

8          $35,000.

9      2.    For reasonable attorneys' fees and costs.

10      3.    For costs and other damages according to proof.

11      4.    For costs of suit herein incurred;

12      5.    For punitive and exemplary damages in an amount to be proven at trial.

13      6.    For prejudgment and post-judgment interest on all sums at the statutory rate.

14      7.    For such other and further relief as the Court deems just and proper.

15                              **SILVER LAW FIRM, APC**

16

17

Dated: November 11, 2025                    _____

18                              Zvi "Hershy" Silver

19                              Attorney for Plaintiff ABC Industrial Services, Inc.

20  **III.    DEMAND FOR JURY TRIAL**

21  Plaintiff hereby demands a jury trial on all claims.

22

23                              **SILVER LAW FIRM, APC**

24

25  Dated: November 11, 2025                      _____

26                              Zvi "Hershy" Silver

                            Attorney for Plaintiff ABC Industrial Services, Inc.

27

28

COMPLAINT                                                Page 7

# Exhibit "1"



10/25/2021

Insured: ABC Industrial Services, Inc.
Company: AXIS Surplus Insurance Company
Policy #: EMP21003194-01
Policy Period: 9/23/2021-9/23/2022

Vince West
CRC Group
1815 Via El Prado, Suite 401
Redondo Beach, CA 90277

Re: ABC Industrial Services, Inc.

Dear Vince

Please find the enclosed policy(s) for the above named insured. Please review for accuracy and inform our office of any changes that may be necessary.

If you have any questions please do not hesitate to call your underwriter.

Sincerely,

Lee Jones

# AXIS Surplus Insurance Company

## COMMERCIAL GENERAL LIABILITY – OCCURRENCE FORM
## SITE POLLUTION LIABILITY – CLAIMS MADE FORM

### PLEASE READ THE ENTIRE FORM CAREFULLY

**COVERHOLDER:**   DUAL Commercial, LLC  DBA
DUAL Commercial Insurance
Services, LLC

**POLICY NUMBER:**  EMP21003194-01          **RENEWAL OF:**   New

**COMPANY:**   AXIS Surplus Insurance Company

**1. NAMED INSURED:**   ABC Industrial Services, Inc.
**MAILING ADDRESS:**   1411 N. Magnolia Avenue
El Cajon, CA  92020

**2. POLICY PERIOD:**   a. Inception Date:   9/23/2021          b. Expiration Date:   9/23/2022
at 12:01 A.M.  Standard Time at your mailing address shown above.

### 3. LIMITS OF LIABILITY:

Policy Aggregate Limit for All Claims and Damages:          $2,000,000
Policy Aggregate Limit for All Claims Expenses:          $2,000,000

Commercial General Liability
  Each Occurrence:          $1,000,000
  General Aggregate:          $2,000,000
  Products-Completed Operations Aggregate:          $2,000,000
  Personal and Advertising Injury:          $1,000,000
  Medical Expense:          $10,000
  Damage to Premises Rented to You:          $100,000
Site Pollution Liability
  Each Pollution Condition:          $1,000,000
  General Aggregate:          $2,000,000

### 4. DEDUCTIBLE:

Commercial General Liability          $5,000 per Occurrence
Site Pollution Liability          $5,000 per Claim

| **5. PREMIUM:** | Policy Term Premium | $ | 10,686.00 |
| | Minimum Earned Premium | $ | 2,671.50 |
| | Rate per $1,000 Receipts | | FLAT |
| | Exposure Basis:  Revenue | $ | 1,500,000 |
| | Policy Fee: | $ | 150.00 |
| | **Premium is Minimum and Deposit** | | |

**PGI EL 001 CA 0918**                                        Page 1 of 2

**6. RETROACTIVE DATE:**

Site Pollution Liability - September 23, 2021

**7. COVERED SITE(S):**
1411 N. Magnolia Avenue, El Cajon, CA

**8. NOTICE OF CLAIM TO:**

**AXIS Insurance**
**Attn: Claims Department**
**11680 Great Oaks Way, Suite 500**
**Alpharetta, GA 30022**
**Fax: 866-770-5629**
**Email: 'usclaimnoticebh@axiscapital.com'**

**FORMS AND ENDORSEMENTS ATTACHED**
**AT INCEPTION:**                    See Schedule of Forms

**THESE DECLARATIONS TOGETHER WITH THE APPLICATION, FORMS AND**
**ENDORSEMENTS ISSUED TO FORM A PART THEREOF, COMPLETE, THE ABOVE**
**NUMBERED POLICY.**

10/25/2021
(Date)                              (Authorized Representative)

This insurance is issued pursuant to the CA INS s 1760 through CA INS s 1780 and is placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner.



# SIGNATURE PAGE

IN WITNESS WHEREOF, the Insurer has caused this policy to be issued by affixing hereto the facsimile signatures of its President and Secretary.

Secretary

Andrew Weissert, Secretary

President

Carlton Maner, President

# *NOTICE TO POLICYHOLDER*
## IMPORTANT CLAIM INFORMATION

TO REPORT A CLAIM OR IF YOU HAVE ANY QUESTIONS RELATED TO A CLAIM,
PLEASE REFER THESE MATTERS TO THE ADMINISTRATORS AS OUTLINED
BELOW:

### **FOR ALL LOSSES**

PLEASE CALL, FAX OR EMAIL:
AXIS Insurance

**VIA Email:**

usclaimnoticebh@axiscapital.com

**VIA FAX:**

1-866-770-5629

**VIA MAIL:**

AXIS Insurance
PO Box 4470
Alpharetta, GA 30022

**VIA UPS/FED Ex:**

AXIS Insurance
Attn: Claims Department
11680 Great Oaks Way, Suite 500
Alpharetta, GA 30022



**POLICYHOLDER NOTICE**

**CALIFORNIA**

1. THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO



CONTACT THE NAIC'S INTERNET WEBSITE AT WWW.NAIC.ORG.

5. FOREIGN INSURER SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATES DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS. THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BY BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME



EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

 **AXIS SURPLUS INSURANCE**

# CALIFORNIA SERVICE OF SUIT

All lawful process may be served in any action, suit or proceeding instituted in California by or on behalf of any Insured or beneficiary under this Policy against the Company arising out of this Policy, upon the Company's registered agent at the following address:

**Ms. Melissa DeKoven**

**Corporation Service Company**

**2710 Gateway Oaks Drive #150N**

**Sacramento, CA 95833**

In the event the Commissioner of Insurance of the state of California receives service of process on behalf of the Company, said service shall be forwarded to the Company at:

**AXIS U.S. Insurance**

**Attn: Claims Administrator**

**10000 Avalon Blvd.**

**Suite 200**

**Alpharetta, GA 30009**

# Schedule of Forms

Named Insured  ABC Industrial Services, Inc.

Policy No:    EMP21003194-01          AXIS Surplus Insurance Company

| Form Name | Form Edition No |
|---|---|
| Declarations Page | PGI EL 001 CA 0918 |
| Signature Page | AXIS 102 ASIC |
| Notice to Policyholder | AXIS001 0918 |
| Policyholder Notice | AXIS CA 105 0316 |
| Service of Suit | AXIS 106CA 0220 |
| Schedule of Forms | PGI EL 041 0210 |
| Commercial General Liability Coverage Form | CG00011207 |
| Financial Interest Clause | PGI PL 083 0518 |
| Additional Insured - Owners, Lessees or Contractors - Scheduled Person or Organization | CG20100704 |
| Additional Insured - Owners, Lessees, or Contractors - Completed Operations | CG20370704 |
| Employment - Related Practices Exclusion | CG21470798 |
| Exclusion - Exterior Insulation and Finish Systems | CG21861204 |
| Waiver of Transfer of Rights of Recovery Against Others To Us | CG24041093 |
| Exclusion - Testing or Consulting E & O | CG22330798 |
| Common Policy Conditions | PGI EL 036 0210 |
| Mold, Mildew and Fungus Exclusion | PGI EL 008 0210 |
| Policy Aggregate Endorsement | PGI EL 002 0210 |
| Governmental Mandate Endorsement | PGI EL 029 0210 |
| Intended Use Endorsement | PGI EL 034 0210 |
| Site Pollution Liability Coverage Form | PGI EL 026 0210 |
| Designation of Surplus Lines Agent | PGI PL 002 |
| Reliance Upon Other Carrier's Application | PGI EL 042 1010 |
| TCPA Exclusion | PGI PL 074 1212 |
| Non-Owned Disposal Site Liability Coverage Endorsement (Blanket) | PGI EL 055 0915 |
| Exclusion - All Work Performed in the State of New York | PGI EL 057 0915 |
| Deductible Liability Insurance | CG03000196 |
| Nuclear Incident Exclusion | SLX-1008-01-14b |
| Coronavirus Endorsement | AXIS 1012679 0320 |
| Notice of Terrorism Insurance Coverage - TRIA Declined | TRIA Declined Disclosure 0115 |
| U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") | DE0010 1210 |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

  **(a)** Employment by the insured; or

  **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

CG 00 01 12 07    □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

    © ISO Properties, Inc., 2006    CG 00 01 12 07    ☐

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

 © ISO Properties, Inc., 2006

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006     □

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

© ISO Properties, Inc., 2006

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A**; and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

  **(1)** How, when and where the "occurrence" or offense took place;

  **(2)** The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006       □

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

© ISO Properties, Inc., 2006

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

    © ISO Properties, Inc., 2006

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

  a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  b. While it is in or on an aircraft, watercraft or "auto"; or

  c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

  but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  b. Vehicles maintained for use solely on or next to premises you own or rent;

  c. Vehicles that travel on crawler treads;

  d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1) Power cranes, shovels, loaders, diggers or drills; or

    (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

  e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) Cherry pickers and similar devices used to raise or lower workers;

  f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

  (1) Equipment designed primarily for:

    (a) Snow removal;

    (b) Road maintenance, but not construction or resurfacing; or

    (c) Street cleaning;

  (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

  (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

CG 00 01 12 07    □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    © ISO Properties, Inc., 2006

     **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

     **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

## FINANCIAL INTEREST CLAUSE

In consideration of the premium charged and subject to the terms, conditions, limitations and exceptions of this Policy, the Insurer shall provide coverage to the First Named Insured for its financial interest in any specific entity which would otherwise be covered under this Policy but which is located in a jurisdiction where:

(i)     applicable law or regulation do not, to the best of the Insurer's good faith knowledge, allow it to provide coverage;   or

(ii)    the First Named Insured has elected that the Policy will not cover such specific entity directly but will cover the First Named Insured's own financial interest in such entity.

The Insurer and First Named Insured agree that:

(iii)   the First Named Insured has a financial interest in the specific Entity because it benefits financially from the continued operation of the specific Entity and/or would be prejudiced by loss to, or damage to, or liability incurred by the specific Entity in the operation of its business; and

(iv)    the Insurer shall indemnify the First Named Insured in respect of any loss to its financial interest, in the amount which would have been payable to the specific Entity if a policy with the same terms and conditions as this Policy had been issued to such specific entity, save that no indemnity shall be provided in respect of any insuring clause which would have covered any individual person. The Policy will not provide any coverage to the specific entity.

Where the First Named Insured is indemnified under this Policy for a loss to its financial interest, the Insurer shall be subrogated to all rights and remedies of the First Named Insured.   If requested by the Insurer, the First Named Insured shall:

(v)     report fully and fairly on any causes of action which the specific Entity may have against any third party arising out of the facts and circumstances which gave rise to the loss; and

(vi)    arrange to be assigned the benefit of any cause of action the specific entity may have against any such third party (including any insurer issuing a policy to the Uncovered Entity) and that the specific Entity shall cooperate with the Insurer in pursuing such cause of action.

Any sanctions exclusion in the Policy will take precedence over this financial interest clause.   All other terms, conditions and limitations of the Policy shall remain unchanged.

Policy Number: EMP21003194-01

**COMMERCIAL
GENERAL LIABILITY
CG 20 10 07 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to name as an Additional Insured. However, this status exists only for the project specified in that contract. | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or

2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to "bodily injury" or "property damage" occurring after:

1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 07 04

Policy number: EMP21003194-01

**COMMERCIAL
GENERAL LIABILITY
CG 20 37 07 04**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

## SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s): | Location And Description Of Completed Operations |
|---|---|
| Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to name as an additional insured. However, this status exists only for the project specified in that contract. | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

CG 20 37 07 04

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

  **(a)** Refusal to employ that person;

  **(b)** Termination of that person's employment; or

  **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

COMMERCIAL GENERAL LIABILITY
CG 21 86 12 04

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

 1. The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system" or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such a system; or

 2. "Your product" or "your work" with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system", or any substantially similar system, is used on the part of that structure containing that component, fixture or feature.

**B.** The following definition is added to the **Definitions** Section:

"Exterior insulation and finish system" means a non-load bearing exterior cladding or finish system, and all component parts therein, used on any part of any structure, and consisting of:

 1. A rigid or semi-rigid insulation board made of expanded polystyrene and other materials;

 2. The adhesive and/or mechanical fasteners used to attach the insulation board to the substrate;

 3. A reinforced or unreinforced base coat;

 4. A finish coat providing surface texture to which color may be added; and

 5. Any flashing, caulking or sealant used with the system for any purpose.

© ISO Properties, Inc., 2003

POLICY NUMBER: EMP21003194-01

COMMERCIAL
GENERAL LIABILITY
CG 24 04 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### SCHEDULE

**Name of Person or Organization:**

Any person(s) or organization(s) whom the Named Insured agrees, in a written contract, to provide a waiver of subrogation.

However, this status exists only for the project specified in that contract.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section **IV** – COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 10 93          Insurance Services Office, Inc., 1992

COMMERCIAL GENERAL LIABILITY
CG 22 33 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION -- TESTING OR CONSULTING ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

1. An error, omission, defect or deficiency in:

   **a.** Any test performed; or

   **b.** An evaluation, a consultation or advice given,

   by or on behalf of any insured;

2. The reporting of or reliance upon any such test, evaluation, consultation or advice; or

3. An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

Copyright, Insurance Services Office, Inc., 1997

## COMMON POLICY CONDITIONS ENDORSEMENT

This endorsement changes the Policy. Please read it carefully.

In consideration of the premium charged, and notwithstanding anything contained in this policy to the contrary, it is hereby agreed that all coverage parts included in this policy are subject to the following conditions:

### A.    CANCELLATION

The *named insured* may cancel this policy by mailing to the Company written notice stating when thereafter such cancellation shall become effective. The Company may cancel this policy by mailing to the *named insured*, at the mailing address specified the Declarations, written notice stating when not less than thirty (30) days thereafter such cancellation shall become effective, except in the event of the *named insured's* nonpayment of premium, not less than ten (10) days advance notice of cancellation shall be given. The mailing of notice as aforesaid, shall be sufficient proof of either party's intent to cancel. The effective date of cancellation specified in such notice shall terminate this *policy period*. Delivery of such notice shall be equivalent to mailing.

If the *named insured* cancels, the earned premium shall be computed in accordance with the customary short rate table. If the Company cancels, the earned premium shall be computed pro rata. The Company will tender any return premium subject to retaining a minimum earned premium equal to 25% of the amount specified in the Declarations.

Premium adjustment may be made either at the time cancellation is effective or as soon as practicable thereafter, but tender of the unearned premium or return of this policy, shall not be conditions precedent to cancellation hereunder.

### B.    CHANGES

No provision of this policy may be amended, waived or otherwise changed, except by endorsement hereto.

### C.    EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three (3) years afterward.

### D.    INSPECTIONS AND SURVEYS

We have the right, but are not obliged to:

1.    Make inspections and surveys at any time; and

2.   Give you reports on the conditions we find; and

3.   Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. We do not warrant that conditions:

1.   Are safe or healthful; or

2.   Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service, engineering firm or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E.    NAMED INSURED AS AGENT**
The *named insured* specified in the Declarations shall be deemed agent of each *insured* with respect to all matters involving this policy, however, the Company shall have the right to seek indemnification from any *insured* or any other person who may be legally liable for the debts of the *named insured*.

**F.    PREMIUMS**

The first *Named Insured* shown in the Declarations:

1.   Is responsible for the payment of all premiums; and

2.   Will be the payee for any return premiums we pay; and

3.   Is responsible for the payment of all deductibles and self-insured retention amounts under this policy.

**G.    ADDITIONAL PREMIUMS**

If, during this *policy period*, an increase in the risk or hazards covered hereunder occurs, the Company shall have the right to charge the appropriate additional premium.

**H.    TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual *Named Insured*. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**I.     BANKRUPTCY**

Bankruptcy or insolvency of the *insured* or of the *insured's* estate will not relieve us of our
obligations under this Coverage Part.

## MOLD, MILDEW AND FUNGUS EXCLUSION

This endorsement changes the Policy. Please read it carefully.

In consideration of the premium charged, and not withstanding anything contained in this policy to the contrary, it is hereby agreed that this insurance does not apply to any LOSS, CLAIM or CLAIMS EXPENSE arising directly or indirectly out of, or in concurrence with actual, alleged or threatened existence, growth, spread, proliferation, discharge, dispersal, seepage, release or escape of any form of fungus, including mold or mildew, and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**POLICY AGGREGATE LIMIT ENDORSEMENT**

This endorsement changes the Policy.  Please read it carefully.

In consideration of the premium charged, and notwithstanding anything contained in this policy to the contrary, it is hereby agreed that all coverage parts included in this policy are subject to the following:

As specified in the Declarations:

1. The "Policy Aggregate Limit for All Claims and Damages" amount shown in the declarations is the maximum amount WE will pay under all Coverage Parts combined that form a part of this policy, for all CLAIMS AND DAMAGES arising from covered CLAIMS.

2. The "Policy Aggregate Limit for All Claims Expenses" amount shown in the declarations is the maximum amount WE will pay under all Coverage Parts combined that form a part of this policy, not including the Commercial General Liability coverage parts, if applicable, for all CLAIMS EXPENSES arising from covered CLAIMS.

## GOVERNMENTAL MANDATE ENDORSEMENT

This endorsement changes the Policy.  Please read it carefully.

In consideration of the premium charged, it is hereby agreed that the Pollution Liability Coverage Form, I. Insuring Agreements, Coverage A – Onsite Cleanup, paragraph 1. is deleted in its entirety and replaced by the following:

1. The Company will pay **cleanup costs** that result from **governmental mandate(s)** upon you, but the amount the Company will pay is limited as described in Limit of Liability and Deductible (Section VI).

It is further agreed that the following definition is added to the policy with respect to this endorsement:

**Governmental mandate(s)** means a directive, order or requirement of the government of the United States or any of its states, or Canada or any of its provinces, political subdivisions, or court order duly acting under the authority of environmental or related laws to cleanup, remediate, or mitigate any **pollution conditions** at, on, or under the insured's **site(s)** to which this insurance applies.



PGI EL 029 0210

Page 1 of 1

## INTENDED USE ENDORSEMENT

This endorsement changes the Policy.  Please read it carefully.

It is hereby agreed that the expected and planned use of the site(s) during the policy period is:

Concrete & asphalt recycling

If at any time during the policy period the insured shall become aware of any changes in the expected and planned use of the site they are required to notify us within thirty (30) days of such change.  Upon receipt of such notification, the Company reserves the right to modify the terms and conditions of the policy.

PGI EL 034 0210                                                        Page 1 of 1

# Site Pollution Liability Policy

THIS POLICY APPLIES ONLY TO POLLUTION CONDITIONS DISCOVERED, OR CLAIMS FIRST MADE AND REPORTED, DURING THE POLICY PERIOD. UNLESS OTHERWISE PROVIDED BY ENDORSEMENT, COSTS, CHARGES AND EXPENSES OF DEFENSE WILL BE PART OF, AND INCLUDED WITHIN, THE APPLICABLE LIMITS OF LIABILITY. COVERAGE UNDER THIS POLICY MAY DIFFER FROM THE COVERAGES AFFORDED UNDER OTHER POLICIES THE INSURED MAY HAVE PURCHASED. THE WORD "INSURED" MEANS ANY PERSON OR ORGANIZATION QUALIFYING AS SUCH UNDER "WHO IS AN INSURED" (SECTION III). OTHER TERMS IN BOLD FACE TYPE ARE DEFINED TERMS WITH SPECIFIC MEANINGS SET FORTH IN THE POLICY. PLEASE READ THE POLICY CAREFULLY.

In consideration of the payment of the premium and in reliance upon the statements in the Application, and subject to all the terms, conditions, and limitations hereof and any endorsements hereto, the Company agrees with the **Named Insured** as follows:

**I.    INSURING AGREEMENTS**

**Coverage A – Onsite Cleanup**

1) The Company will pay **cleanup costs** that result from **pollution conditions** at, on, or under the Insured's **site(s)** to which this insurance applies, but the amount the Company will pay is limited as described in LIMITS OF LIABILITY AND DEDUCTIBLE (SECTION VI).

2) This insurance applies to **cleanup costs** that result from **pollution conditions** only if:

   a) The **cleanup costs** are caused by **pollution conditions** which take place in the **coverage territory**; and

   b) The **pollution conditions** commence after the Retroactive Date shown in the Declarations, if any, and before the end of the **policy period**; and

   c) The request for payment of **cleanup costs** is first made by the Insured, in accordance with paragraph 3. below, during the **policy period**.

3) A request for payment of **cleanup costs** by the Insured or someone legally representing the Insured will be deemed to have been made when the **pollution conditions** are first discovered by the Insured and reported to the Company during the **policy period**.

**Coverage B – Third Party Claims**

1) The Company will pay on behalf of the Insured those sums that the Insured becomes legally obligated to pay as damages from **claims** for **bodily injury** or **property damage** that result from **pollution conditions** at, on, under or migrating from the Insured's **site(s)** to which this insurance applies. The Company will have the right and duty to defend the Insured against any **suit** seeking those damages. However, the Company will have no duty to defend the Insured against any **suit** seeking damages for **bodily injury** or **property damage** that result from **pollution conditions** at, on, under or migrating from the Insured's **site(s)** to which this insurance does not apply. The Company may, at its discretion, investigate any **pollution condition** and settle any **claim** or **suit** that may result. But:

   a) The amount the Company will pay for damages is limited as described in LIMITS OF LIABILITY AND DEDUCTIBLE (SECTION VI); and

PGI EL 026 0210

Page 1 of 15

b) The Company's right and duty to defend end when the Company has exhausted the applicable limit of liability by the payment of judgments, settlements, or expenses under all Insuring Agreements or by the payment of any Defense expense which reduce the limits of liability.

2) This insurance applies to **claims** that result from **pollution conditions** only if:

a) The **pollution conditions** take place in the **coverage territory**; and

b) The **pollution conditions** commence after the Retroactive Date shown in the Declarations, if any, and before the end of the **policy period**; and

c) The **claim** is first made against an Insured (in accordance with paragraph 3. below) and reported to the Company during the **policy period** or any Extended Reporting Period.

3) A **claim** by a person or organization seeking damages will be deemed to have been made at the earlier of the following:

a) When written notice of such **claim** is received by the Insured; or

b) When the Company settles a **claim** in accordance with paragraph 1. above.

All **claims** for damages to the same person, including damages claimed by any person or organization for care, loss of services or death resulting at any time, will be deemed to have been made at the time the first of those **claims** is made against any Insured.

**Coverage C – Defense Expense**

The Company will pay, with respect to any **claim** we investigate or settle, or any **suit** against an Insured we defend:

1) All expenses the Company incurs, including but not limited to expenses incurred pursuant to its rights and duties to investigate, settle and defend **claims** and **suits**.

2) All reasonable expenses incurred by the Insured at the Company's request to assist the Company in the investigation or defense of the **claim** or suit, including actual loss of earnings up to $250 a day because of time off from work to attend any trial, deposition, or interrogatory at which the Company has requested the Insured's attendance, or at which such attendance is required by the court.

3) All costs taxed against the Insured in the **suit**.

4) Prejudgment interest awarded against the Insured on that part of a judgment the Company pays. If the Company makes an offer to pay the applicable limit of insurance, the Company will not pay any prejudgment interest based on that period of time after the offer.

5) All interest on the full amount of any judgment that accrues after entry of the judgment and before the Company has paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of the insurance.

These payments will reduce the limits of insurance shown in the Declarations.

## II. EXCLUSIONS

A. **Applicable to Coverages A, B, and C:**

1) This policy does not apply to punitive damages, exemplary damages, multiplied damages, fines or penalties. However, this insurance will apply to punitive damages where allowable by law.

2) This policy does not apply to **cleanup costs**, **claims**, or defense expense:

a) Arising out of or related to **pollution conditions** existing prior to the inception of this policy, and reported to any officer, director, partner or other employee responsible for environmental affairs of the named insured. This exclusion does not apply to **pollution conditions** disclosed to the company prior to the inception of this policy and scheduled by endorsement.

b) Based upon or arising out of the liability of others assumed by an Insured under any contract or agreement, unless the liability of such Insured would exist in the absence of a contract or agreement.

c) Arising out of or related to **pollution conditions** which result from the use, ownership, operation, maintenance or entrustment to others of any **auto**, aircraft, watercraft, or rolling stock owned or operated by, or leased, rented or loaned to any Insured.

This exclusion shall not apply to pollution conditions which:

  i) Occur during loading or unloading operations performed at your **site(s)**; or

  ii) Commence during the transportation of **your product** or wastes by a **carrier**; and

  iii) Result in **bodily injury**, **property damage**, or **cleanup costs** during the transportation of **your product** or wastes; and

  iv) Commence on or after the inception of this policy.

No coverage is provided for the mis-delivery of any liquid product by **auto**, aircraft, watercraft, or rolling stock.

d) Arising out of or related to **pollution conditions** at, on, under or migrating from any **site(s)** that first commence after such property is sold, given away, abandoned or condemned.

e) Arising out of or related to the presence of asbestos or any asbestos-containing products, fibers, or asbestos dust, unless specifically endorsed onto this policy.

f) Arising out of or related to an Insured's intentional, willful or deliberate non-compliance with any statute, regulation, ordinance, administrative complaint, notice of violation, notice letter, executive order or instruction of any governmental or public agency or body either before or after policy inception.

g) Arising out of or related to any **bodily injury** to an **employee** or **executive officer** of any Insured or any parent, subsidiary or affiliate thereof arising out of and in the course of: (i) employment by such Insured or its parent, subsidiary or affiliate; or (ii) performing

duties related to the conduct of the business of the Insured or its parent, subsidiary or affiliate.

This exclusion will apply whether the Insured may be liable as an employer or in any other capacity, and will apply to any obligation on the part of the Insured to share damages with or repay someone else who must pay damages because of the **bodily injury**. In addition, this exclusion will apply to any **claim** by a spouse, child, parent, brother or sister of an **employee** based upon or arising out of **bodily injury** to such **employee**.

h) Arising out of or related to any obligation of any Insured under a workers compensation, disability benefits, unemployment compensation, employee benefits, pension, profit sharing, or ERISA law or any similar law.

i) Arising out of or related to **pollution conditions** which result from the existence of any underground storage tank(s) or associated piping at the Insured's **site(s)**, but only if the existence of the underground storage tank(s) or associated piping is known by any Insured prior to the effective date of this policy. This exclusion will not apply to underground storage tank(s) or associated piping when endorsed onto this policy.

j) Based upon or arising out of any consequence, whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power, strike, riot, or civil commotion.

**B.** **Applicable to Coverage A only:**

This policy does not apply to **cleanup costs:**

1) Arising out of or related to or in connection with any **capital expenditure** or improvement to or at your **site(s)** unless the **pollution condition** was discovered in the process of incurring any **capital expenditure** or performing improvement to or at your **site(s)**.

2) Arising out of or related to the existence, required removal or abatement of lead paint unless specifically endorsed onto this policy.

**C.** **Applicable to Coverages B and C only:**

This policy does not apply to **claims:**

1) Against any Insured by any other Insured or former Insured under this policy.

2) Arising out of or related to **pollution conditions** at, on, under or migrating from any location to which the Insured has sent waste materials for treatment, storage or disposal, unless such disposal **site(s)** are designated on the Declarations Page or by endorsement.

3) Arising out of **your product** or **your work** away from your **site(s)**.

**III.** **WHO IS AN INSURED**

**A.** If the **Named Insured** is designated in the Declarations as:

1) An individual, the **Named Insured** and his or her spouse are Insureds, but only with respect to the conduct of a business of which the Named Insured is the sole owner.

2) A partnership or joint venture, the **Named Insured** is an Insured. Its members, its partners, and their spouses are also Insureds, but only with respect to the conduct of the **Named Insured's** business.

3) A limited liability company, the **Named Insured** is an Insured. Its members are also Insureds, but only with respect to the conduct of the **Named Insured's** business. Its managers are Insureds, but only with respect to their duties as the **Named Insured's** managers.

4) An organization other than a partnership, joint venture, or limited liability company, the **Named Insured** is an Insured. Its **executive officers** and directors are Insureds, but only with respect to their duties as officers or directors.

B.    Each of the following is also an Insured:

1) The Insured's **employees**, other than either its **executive officers** (if it is an organization other than a partnership, joint venture, or limited liability company) or its managers (if it is a limited liability company), but only for acts within the scope of their employment by the Insured or while performing duties related to the conduct of the Insured's business.

2) Any person (other than the Insured's **employee**), or any organization while acting as the Insured's real estate manager.

3) Any person or organization having proper temporary custody of the Insured's **site(s)** if the Insured dies, but only:

a) With respect to liability or **cleanup costs** arising out of the maintenance or use of the Insured's **site(s)**; or

b) Until the Insured's legal representative has been appointed.

4) The Insured's legal representative if he or she dies, but only with respect to duties as such. That representative will have all of the Insured's rights and duties under this policy.

## IV.    NOTICE REQUIREMENTS

As a condition precedent to the Insured's rights to coverage under this Policy, the Insured must give the Company notice of **pollution conditions** or **claims** as follows:

A.    If **pollution conditions** are discovered during the **policy period**, or if a **claim** is made during the **policy period** or, if applicable, during an Extended Reporting Period, the Insured must give written notice to the Company as soon as practicable, but in no event later than thirty (30) days thereafter, sufficient to identify such Insured and reasonably obtainable information with respect to:

1) The identity of the **site(s)** at issue, a description of the **pollution conditions** (including the time, place, cause, and nature thereof and other circumstances relating thereto), and all persons with relevant knowledge thereof.

2) Any and all information developed or discovered by the Insured regarding any **claim**, including all correspondence between the Insured and any claimant; all demands, summonses, notices or other processes, complaints or papers regarding such **claim** filed with any court, administrative agency or investigative body; all technical reports, laboratory data, field notes, or any other documents generated by persons hired by the Insured to investigate or remediate any **pollution conditions**; and all relevant expert reports, investigations, and data collected by experts retained by the Insured, whether or not the Insured intends to use the material for any purpose.

B.    The obligation of the Insured to comply with this notice provision will not be excused if the Company becomes aware of **pollution conditions** through any independent means.

## V.    RIGHTS OF THE COMPANY AND DUTIES OF THE INSURED

A.    **The Company's Rights**:

1) After receiving notice in conformity with Section IV above, the Company will have the right, but not the duty, to clean up or mitigate any **pollution conditions** of which it has been given notice.

2) The Company will have the right, but not the duty, to review and approve all aspects, including any and all contemplated actions, of any **cleanup** as described in this policy.

3) Any amounts expended by the Company in the **cleanup** or mitigation of **pollution conditions** of which it has been given notice will be applied against the applicable Limit of Liability and deductible set forth in the Declarations.

B.    **The Insured's Duties**:

1) The **Named Insured** will have the duty to retain competent professionals or contractors mutually acceptable to the Company and the Named Insured to clean up **pollution conditions**. The Named Insured must promptly notify the Company of actions and measures taken pursuant to this Section.

2) The Insured must cooperate with the Company and offer all reasonable assistance in the investigation and defense of any **claim** or **cleanup** of **pollution conditions**. At the Company's request, the Insured must submit to examination under oath, attend hearings, depositions and trials, provide written statements and/or attend meetings with the Company. The Insured must also assist the Company in effecting settlements, securing and providing documents or other evidence and obtaining the attendance of witnesses.

3) The Insured may incur no costs, charges or expenses in the defense or investigation of any **claim** or discovery of **pollution conditions** without the Company's written consent, which shall not be unreasonably withheld. No Insured may voluntarily enter into any settlement or make any payment or assume any obligation without the Company's written consent, unless the Insured does so: (a) in response to an **emergency situation** which requires an immediate response to **pollution conditions**, (b) pursuant to federal, state and/or local law which requires immediate response to **pollution conditions**, or (c) at its own cost.

4) If an Insured is entitled by law to choose independent legal counsel at the Company's expense, then any and all such expenses associated with such independent legal counsel's defense of the Insured shall be limited to the then-prevailing rates the Company pays its

own legal counsel to defend a similar action or proceeding under Coverage B and/or Coverage C in the jurisdiction where such action or proceeding is pending.

In addition, the Company shall require, and the Insured shall have the duty to ensure, that such independent legal counsel have certain minimum qualifications with respect to their competency, including experience in defending actions or proceedings similar to the action or proceeding pending against the Insured, and that such counsel has errors and omissions coverage.

Also, the Insured shall have the duty to ensure that such independent legal counsel cooperate with the Company in the defense of any such action or proceeding, including but not limited to, timely responding to the Company's requests for status reports and immediately providing the Company any and all non-privileged information that it may request.

The Insured may at any time, by written notice to the Company, waive its right to choose independent legal counsel.

## VI.    LIMITS OF LIABILITY AND DEDUCTIBLE

The Company's obligations under this Policy are subject to the following, regardless of the number of claims, claimants, **pollution conditions**, or Insureds under this policy:

A.    **Policy Aggregate Limit:**

The Company's maximum liability under this policy for all **cleanup costs**, **claims**, **bodily injury**, **property damage**, and defense expense will not exceed the policy's General Aggregate Limit of Liability set forth in the Declarations.

B.    **Each Pollution Condition Limit:**

Subject to and included in the limit of liability described in Section VI. A. above, the Each Pollution Condition Limit set forth in the Declarations is the maximum amount the Company will pay for all **cleanup costs**, **claims**, **bodily injury**, **property damage**, and defense expense arising from the same, continuous or related **pollution conditions**.

**Related Pollution Conditions:**

If an Insured discovers **pollution conditions** at, on or under a **site** during the **policy period** and reports such discovery to the Company pursuant to Section IV of this policy, all continuous or related **pollution conditions** discovered and reported to the Company under a subsequent policy or policies issued by the Company or an affiliate thereof providing coverage substantially the same as the coverage afforded under this policy will be treated as if they were discovered and reported to the Company during this **policy period**. There will be no coverage under this policy, however, for such subsequently discovered **pollution conditions** unless, at the time of such subsequent discovery, the **Named Insured** has maintained with the Company or an affiliate thereof coverage substantially the same as the coverage afforded under this policy on a continuous, uninterrupted basis since the initial discovery of **pollution conditions**. All **cleanup costs** arising from such continuous or related **pollution conditions** will be subject to the Each Pollution Condition Limit applicable when the original **pollution conditions** were discovered and reported.

PGI EL 026 0210                                                    Page 7 of 15

If a **claim** is made against an Insured and reported to the Company pursuant to Section IV, all **claims** arising from the same, continuous or related **pollution conditions** made against an Insured and reported under a subsequent policy or policies issued by the Company or an affiliate thereof providing coverage substantially the same as the coverage afforded under this policy will be treated as if they were first made and reported during this **policy period**. There will be no coverage under this policy for such **claims**, however, unless at the time such **claims** are subsequently made and reported the **Named Insured** has maintained with the Company or an affiliate thereof coverage substantially the same as the coverage afforded under this policy on a continuous, uninterrupted basis since the first such **claim** was made and reported to the Company. All liability of the Company for **cleanup costs, bodily injury, property damage,** and defense expense arising from such **claims** will be subject to the Each Pollution Condition Limit applicable when the first of such **claims** was made and reported.

C.   **Deductible:**

Subject to Sections VI. A. and VI. B. above, this policy will pay the amount of covered **cleanup costs,** damages resulting from **claims** for **bodily injury** or **property damage,** and defense expense, as the case may be, that exceeds the deductible amount set forth in the Declarations, up to but not exceeding the Each Pollution Condition Limit set forth in the Declarations. A single deductible amount will apply to all **cleanup costs, claims, bodily injury, property damage,** and defense expense arising from the same, continuous or related **pollution conditions**. The Company has the right, but not the obligation, to make any payments associated with **cleanup costs, claims, bodily injury, property damage,** or defense expense within the amount of the applicable deductible if the Company, in its discretion, deems it advisable to do so. If the Company exercises this right, the Insured must promptly, but in no event later than thirty (30) days, reimburse the Company for any payments made by the Company within the amount of the applicable deductible.

VII.   **DEFINITIONS**

A.   **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. **Auto** does not include **mobile equipment.** However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos:**

1)   Equipment designed primarily for snow removal, road maintenance other than construction or resurfacing, or street cleaning;

2)   Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

3)   Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

B.   **Bodily injury** means physical injury, sickness or disease sustained by a person, including death resulting from any of these at any time, including mental anguish or emotional distress which arises out of physical injury.

C.   **Capital Expenditure** means funds spent for additions or improvements to your plant or equipment for voluntary reasons or to comply with the requirements of any regulatory agency to prevent future **pollution conditions.**

D.  **Carrier** means a person or entity, other than the insured or any subsidiary or affiliated company of the insured, engaged in the business of transporting property for hire by **auto**, rolling stock, aircraft or watercraft.

E.  **Claim** means a written request or demand received by an Insured for money or services, including the institution of a **suit** or arbitration proceedings against an Insured seeking damages.  **Claim** includes any directive, order, requirement, court order or **suit** of the government of the United States or Canada or any local, State, or Provincial Government entity of the United States of America or Canada duly acting under the authority of environmental or related laws.

F.  **Cleanup** means the investigation, evaluation, monitoring, testing, removal, containment, treatment, disposal, remediation, detoxification or neutralization of **pollutants** to the extent required by Federal, State, Local or Provincial Laws, including but not limited to statutes, rules, ordinances, guidance documents, regulations, and all applicable amendments thereto, including state voluntary cleanup or risk based corrective action guidelines.

G.  **Cleanup costs** mean the expenses incurred to perform a **cleanup**.  **Cleanup costs** do not include **capital expenditures. Cleanup costs** include **restoration costs**.

H.  **Coverage territory** means:

1)  The United States of America (including its territories and possessions), Puerto Rico and Canada;

2)  International waters or airspace, provided that injury or damage does not occur in the course of travel or transportation to or from any place not included in 1. above.

I.  **Emergency situation** means an unforeseen event that calls for immediate action to prevent or mitigate **pollution conditions**.

J.  **Employee** includes temporary and leased staff working on behalf of and under direct supervision of an Insured, but only for **your work**.

K.  **Executive officer** means a person holding any of the officer positions created by your charter, constitution, by-laws or similar governing document.

L.  **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

1)  Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads.

2)  Vehicles maintained for use solely on or next to premises you own or rent.

3)  Vehicles that travel on crawler treads.

4)  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a)  power cranes, shovels, loaders, diggers or drills; or

   b)  road construction or resurfacing equipment such as graders, scrapers or rollers.

   c)  Vehicles not described in 1., 2., 3., or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    i)   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

    ii)   cherry pickers and similar devices used to raise or lower workers.

    iii)   Vehicles not described in 1., 2., 3., or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

M.  **Named Insured** means the person(s) or entity (ies) identified as such in the Declarations or by endorsement.

N.  **Policy period** means the period set forth in the Declarations, or any shorter period upon **termination of coverage.**

O.  **Pollutant(s)** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapors, soot, fumes, acids, alkalis or toxic chemicals, and includes waste.

P.  **Pollution conditions** mean the discharge, dispersal, seepage, migration, release or escape of **pollutants.**

Q.  **Property damage** means:

    1)   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    2)   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **pollution condition** that caused it; or

    3)   **Cleanup costs**; or

    4)   Diminished third party property value.

    5)   Physical injury to or destruction of, including the resulting loss of value of, land, fish, wildlife, biota, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States, any state or local government, any foreign government, any Indian tribe, or, if such resources are subject to a trust restriction on alienation, any member of an Indian tribe.

R.  **Restoration costs** means reasonable and necessary costs incurred by the **insured** with the Company's consent, which shall not be unreasonably withheld, to restore, repair or replace real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **cleanup costs.** However such **restoration costs** shall not exceed the appraised value of such property immediately prior to the **pollution conditions** giving rise to such cleanup costs or include costs associated with improvements or betterments.

S.  **Site(s)** means the specific location(s) designated on the Declarations Page or by endorsement onto the policy.

T.  **Suit** means a civil proceeding in which damages because of any acts, errors or omissions to which this insurance applies are alleged. **Suit** includes:

    1)   An arbitration proceeding in which such monetary damages are claimed and to which the Insured must submit or does submit with our consent; or

    2)   Any other alternative dispute resolution proceeding in which such damages are claimed and to which the Insured submits with our consent.

U.   **Termination of coverage** occurs at the time of cancellation or nonrenewal of this policy by the **Named Insured** or by the Company, or at the time the Company deletes a previously covered site.

V.   **Your product** means:

    1)   Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        a)   You;

        b)   Others trading under your name; or

        c)   A person or organization whose business or assets you have acquired.

    2)   Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **Your product** includes:

    1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

    2)   The providing of or failure to provide warning or instructions.

    **Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

W.   **Your work** means:

    1)   Work or operations performed by you or on your behalf; and

    2)   Materials, parts or equipment furnished in connection with such work or operations.

    **Your work** includes:

    1)   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

    2)   The providing of or failure to provide warnings or instructions.

## VIII.   EXTENDED REPORTING PERIOD – COVERAGES B AND C

Upon **termination of coverage**, the **Named Insured** will be entitled to an Automatic Extended Reporting Period, and with certain exceptions as described in paragraph B. below, will also be entitled to purchase an Optional Extended Reporting Period, applicable only to Coverages B and C. Any Extended Reporting Period provided hereunder will only apply to a **claim** arising from **pollution conditions** that commenced prior to the end of the **policy period** and which are otherwise covered by this policy. If there is a **termination of coverage** for less than all of the Insured's **sites**, the Extended Reporting Provisions will apply with respect to those **site(s)** for which coverage was terminated. Neither the Automatic nor the Optional Extended

Reporting Period will operate to reinstate or increase the Limits of Liability stated in the Declarations. Any **claim** first made and reported within either the Automatic or Optional Extended Reporting Period will be treated as if it had been made during the **policy period.** The Automatic Extended Reporting Period will not be applicable if the **Named Insured** exercises its option to purchase the Optional Extended Reporting Period. Neither Extended Reporting Period shall be available to the Insured in the event of nonpayment of premium.

A.   **Automatic Extended Reporting Period:**

Upon **termination of coverage,** the **Named Insured** will be entitled to an Automatic Extended Reporting Period which will be in effect for the period of sixty (60) days after **termination of coverage** as defined herein or until the effective date of any insurance purchased by the **Named Insured** to replace this insurance, whichever is earlier.

B.   **Optional Extended Reporting Period:**

Upon **termination of coverage,** the **Named Insured** will be entitled to purchase an Optional Extended Reporting Period.

The Company will issue an endorsement providing an Extended Reporting Period of up to sixty (60) months from **termination of coverage** hereunder applicable to any insured property, provided that the **Named Insured:**

1)   makes a written request for such endorsement which the Company receives within thirty (30) days after **termination of coverage** as defined herein; and

2)   pays the Company an additional premium charge determined by the Company within thirty (30) days of **termination of coverage** as defined herein. Such additional premium charge may not exceed 200% of the policy premium stated in the Declarations, as the same may have been adjusted from time to time.

If the additional premium is paid when due, the Extended Reporting Period may not thereafter be cancelled, provided that all other terms and conditions of the policy are met.

IX.   **CONDITIONS**

A.   **Assignment:** This policy may be assigned only with the prior written consent of the Company. If the **Named Insured** conveys fee title to a covered **site(s)** and notifies the Company, in writing, within forty-five (45) days thereof, the Company's consent to assign this policy to a purchaser of such insured property shall not be unreasonably withheld.

B.   **Subrogation:** In the event of any payment under this policy, the Company will be subrogated to all of the Insured's rights of recovery therefore against any person or organization, and the Insured must execute all documents and do whatever else may be necessary to secure such rights, including without limitation executing assignments of the Insured's rights against any person or organization responsible for any **pollution conditions** on account of which the Company made any payment under this policy. The Insured shall do nothing to prejudice the Company's rights or position under this Section IX. B. Any recovery as a result of subrogation proceedings arising out of the payment of **cleanup costs,** damages, resulting from claims for **bodily injury** or **property damage,** or defense expense will accrue first to the Insured to the extent of any payments by them in excess of the limit of coverage, and then to the Company to the extent of its payment under the policy, and finally to the Insured to the extent of the applicable deductible. Expenses incurred in such subrogation

proceedings will be apportioned among the parties interested in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

C.  **Changes:**  No notice to any agent of the Company or knowledge possessed by any such agent or by any other person will effect any waiver or change in any part of this policy or estop the Company from asserting any rights under the terms of this policy; nor may the terms of this policy be waived or changed, except by endorsement issues to form a part of this policy.

D.  **Sole Agent:**  The **Named Insured** first listed in the Declarations will act on behalf of all other Insureds, if any, with respect to the payment or return of premium, receipt and acceptance of any endorsement issued to form a part of this policy, giving and receiving of notice of cancellation or nonrenewal, and the exercise of the rights provided in Section VIII above.

E.  **Concealment or Misrepresentation:**  Whether or not **cleanup costs** have been incurred, **pollution conditions** have been discovered, or a **claim** has been made, this entire policy will be void if the **Named Insured** has concealed or misrepresented any fact or circumstance material to the granting of coverage under this policy or the interest of the Insured therein.

F.  **Cancellation:**

1)  The **Named Insured** may cancel this policy by surrendering it to the Company or to any of the Company's authorized agents, or by mailing to the Company written notice stating when thereafter such cancellation will be effective.

2)  The Company may cancel this policy by mailing to the **Named Insured**, at the address set forth in the Declarations, written notice stating when, not less than thirty (30) days (ten (10) days for nonpayment of premium) thereafter; such cancellation will be effective.  Proof of mailing of such notice shall be sufficient proof of notice.

3)  The time of surrender or the effective date and hour of cancellation stated in the notice will become the end of the **policy period.**  Delivery of such written notice by the Company will be equivalent to mailing.

G.  **Other Insurance:**  Where other insurance may be available to the Insured for **cleanup costs, claims, bodily injury, property damage,** or defense expense covered under this policy, the Insured shall promptly upon the request of the Company provide the Company with copies of all such insurance policies.  If any other insurance is available to any Insured, the Company's obligations are limited as follows:

1)  This insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary.  In that event, the Company will share with all such other insurance by the method described in paragraph 2. below.

2)  If all of the other insurance permits contribution by equal shares, the Company will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.  If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits.  Under this alternative method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all primary insurers.

H.  **Right of Access and Inspection:**  The Company and its authorized representatives will, when the Company so desires, have the right and opportunity, but not the obligation, to interview persons employed by any Insured and to inspect at any reasonable time, during the **policy period** or

thereafter, any insured property and all improvements, structures, products, ways, works, machinery and appliances thereon; but neither the Company nor its representatives will assume any responsibility or duty to any Insured or to any other party, person or entity by reason thereof. Neither the Company's right to make inspections, sample and monitor, nor the actual undertaking thereof, nor any report thereon will constitute an undertaking, on behalf of any Insured or others, to determine or warrant that property or operations are safe or conform to acceptable practices or comply with any applicable law, rule or regulation. The **Named Insured** will provide appropriate personnel to assist the Company's representatives during any inspection without charge to the Company.

I.  **Access to Information:** The Insured will provide to the Company any and all information they develop or discover concerning **cleanup costs** for **pollution conditions** covered under this policy, whether or not they deem such information to be relevant to such **cleanup costs**, and they will provide the Company free access to interview any agent or **employee** and review any documents of the Insured.

J.  **Representations:** By acceptance of this policy, the **Named Insured** agrees that the statements in the application are their agreements and representations, that this policy is issued in reliance upon the truth of such representations, and that this policy embodies all agreements existing between the **Named Insured** and the Company or any of its agents relating to this insurance.

K.  **Action Against Company:** No action will lie against the Company unless, as a condition precedent thereto, there has been full compliance with all of the terms of this policy, nor until the amount of the Insured's obligation to pay has been finally determined either by judgment against the Insured after actual trial or by written agreement among the Insured, the claimant and the Company. Any person or organization or any legal representative thereof who has secured such judgment or written agreement will thereafter be entitled to recover under this policy to the extent of the insurance afforded by the policy. No person or organization will have any right under this policy to join the Company as a party to any action against the Insured to determine the Insured's liability, nor may the Company be impleaded by any Insured to his, her or its legal representative. Bankruptcy or insolvency or an Insured or of an Insured's estate will not relieve the Company of any of its obligations hereunder.

L.  **Severability:** Except with respect to the Limits of Liability and any rights or duties specifically assigned to the **Named Insured**, this insurance applies as follows:

1) As if each Insured were the only Insured; and

2) Separately to each Insured against whom a **claim** is made or **suit** is brought.

M.  **Material Change in Operations:** The Insured must notify the Company, in writing, within sixty (60) days, of any change in operations at an insured property that materially increases environmental risk described in the application and in other documents disclosed to the Company prior to the **policy period**.

N.  **Choice of Law and Forum:** In the event that the Insured and the Company dispute the validity of formation of this policy or the meaning, interpretation, or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or any other form of dispute resolution, the Insured and the Company agree that the laws of the State of New York shall apply and that all litigation, arbitration or other form of dispute resolution shall take place in the State of New York.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and secretary and signed on the Declarations page by a duly authorized representative or countersigned in states where applicable.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATION OF SURPLUS LINES AGENT

It is agreed that the Surplus Lines Agent with respect to this policy is as follows:

## Surplus Lines Agency

CRC Group - Redondo Beach, CA

## RELIANCE UPON OTHER CARRIER'S APPLICATION

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that the following provision is added to the **CONDITIONS, Representations** section of the policy:

### RELIANCE UPON OTHER CARRIER'S APPLICATION

In the absence of an application from the company providing this insurance, the Insurer has relied upon the statements, representations, warranties (if any) and information contained in the application referenced below (including any materials submitted therewith and attachments submitted thereto, and, if such application is a renewal application, all previous policy applications for which this policy is a renewal or succeeds in time, and any materials submitted therewith and attachments submitted thereto as being accurate and complete (all such applications and materials are collectively referred to hereinafter as "Policy Application"). It is agreed that the Insured represents to the Insurer that the statements, representations, warranties (if any) and information contained in the Policy Application were accurate on the date they were so given. The Insured hereby reaffirms each and every statement, representation and warranty (if any) made in the Policy Application to the insurance carrier listed below as accurate as of the effective date such statement, representation and warranty was made as if they were made to the Insurer on such date. All such statements, representations, warranties (if any) and information shall be deemed to be material to the acceptance of the risk or hazard assumed by the Insurer, are the basis of this policy and are incorporated into and constitute a part of this policy.


All other terms, conditions and exclusions under this policy are applicable to this Endorsement and remain unchanged.

PGI EL 042 1010

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
**AMENDATORY ENDORSEMENT**

**TCPA EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that the insurance provided by this Policy does not apply to any **Claim** based upon or arising directly, or indirectly, out of any actual or alleged violation of the following:

1. The Telephone Consumer Protection Act (TCPA), including any amendment or addition to such law;
2. The Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM Act), including any amendment or addition to such law;
3. The Fair Credit Reporting Act (FCRA), including any amendment or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA);
4. Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating, or distribution of material or information; or
5. Any other law, ordinance, regulation or statute relating to any communication, distribution, publication, sending or transmission via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

In addition, this insurance does not apply to **Claims** asserted under the common law which are alleged to arise out of the distribution, publication, sending or transmission of material or information via telephone, telephone facsimile machine, computer or other telephonic or electronic devices.

All other policy Terms and Conditions remain unchanged.

PGI PL 074 1212

**NON-OWNED DISPOSAL SITE LIABILITY COVERAGE ENDORSEMENT (BLANKET)**

This endorsement changes the Policy. Please read it carefully.

In consideration of the premium charged, it is hereby agreed that the Site Pollution Liability Policy, **I. Insuring Agreements, Coverage A – Onsite Cleanup** is amended by the addition of the following:

4) The Company will pay **cleanup costs** that result from **pollution conditions** arising from the insured's liability as a result of the disposal of wastes or waste materials at the SCHEDULED NON-OWNED DISPOSAL SITE(S).

It is also agreed that the Site Pollution Liability Policy, **I. Insuring Agreements, Coverage B – Third Party Claims** is amended by the addition of the following:

4) The Company will pay **claims** for **bodily injury** or **property damage** that result from **pollution conditions** arising from the insured's liability as a result of the disposal of wastes or waste materials at the SCHEDULED NON-OWNED DISPOSAL SITE(S).

**SCHEDULED NON-OWNED DISPOSAL SITE(S)**

Any waste disposal facility not owned or operated by the insured which at the time the waste, products or materials were delivered to the site:

1) was licensed in the state where they operate
2) was in compliance with the requirements of Title 40 of the United States Code of Federal Regulations and any similar or comparable State regulations
3) was not listed on the National Priorities List ("NPL") or any similar or comparable state list.

PGI EL 055 0915

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – ALL WORK PERFORMED IN THE STATE OF NEW YORK**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE:**

---

**Description of your work:   All work performed in the State of New York.**

---

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

POLICY NUMBER: EMP21003194-01

**COMMERCIAL GENERAL LIABILITY**
**CG 03 00 01 96**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

| Coverage | Amount and Basis of Deductible | |
| --- | --- | --- |
| | PER CLAIM    or   | PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ 5,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

  1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

    a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

    b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

    c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

      (1) "Bodily injury";

      (2) "Property damage"; or

      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

   1. Our right and duty to defend the insured against any "suits" seeking those damages; and

   2. Your duties in the event of an "occurrence", claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96   ☐

# NUCLEAR INCIDENT EXCLUSION

This exclusion applies to all coverages provided by this policy including any and all endorsements.

We do not provide coverage for loss, damage, injury, liability, cost or expense, due to or as a consequence of, whether controlled or uncontrolled or however caused by:

1. Any liability or damage:

    a. With respect to which an insured under this policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or the Nuclear Insurance Association of Canada, or would be an insured under such policy but for its termination upon exhaustion of it limits of insurance; or

    b. Resulting from the "hazardous properties" of "nuclear material" with respect to which

        (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

        (b) the insured is, or had its policy not been issued, would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    c. Resulting from nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination whether direct or indirect; and/or biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

2. Any liability or damage resulting from the "hazardous properties" of "nuclear material", if:

    a. The "nuclear material":

        (1) is at any "nuclear facility" owned by, or operated by or on behalf of, any insured, or

        (2) has been discharged or dispersed there from;

    b. The "nuclear material" is contained in "spent fuel" or "waste" at any time processed, handled, used, processed, stored, transported, or disposed of by or on behalf of an insured; or

c. The injury, sickness, disease, death, destruction or loss arising out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Subparagraph c. applies only to injury to or destruction of or loss of property at such "nuclear facility".

As used in this exclusion:

1. "Hazardous properties" includes radioactive, toxic or explosive properties;

2. "Nuclear facility" means:

   a. any "nuclear reactor";

   b. any equipment or device designed or used for:

      (1) separating the isotopes of uranium or plutonium,

      (2) processing or utilizing "spent fuel", or

      (3) handling, processing, or packaging "waste".

   c. any equipment or device used for processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   d. any structure, basin, excavation, premises, place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on site and all premises used for such operations;

3. "Nuclear material" means "source material", "special nuclear material" or "by-product material". "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

4. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission self-supporting chain reaction or to contain critical mass of fissionable material;

5. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

6. "Waste" means any waste material

SLX-1008-01-14b

(1) containing by-product material, and

(2) resulting from the operation by any person or organization of any "nuclear facility"' included within the definition of "nuclear facility".

With respect to injury to or destruction of or loss of property, the word "injury" or "destruction" or "loss" includes all forms of radioactive contamination of property.

All other terms and conditions of this policy remain unchanged.

Endorsement No.

Effective Date: 9/23/2021 @12:01 a.m. Standard Time at the address of the **Named Insured**
Policy Number: EMP21003194-01
Insured Name:  ABC Industrial Services, Inc.
Issuing Company: AXIS Surplus Insurance Company
Additional (Return) Premium: _____
*If the Endorsement Effective Date is blank, then the effective date of this Endorsement is the Inception Date of the Policy.*

---

## CORONAVIRUS ENDORSEMENT

**THIS ENDORSEMENT MODIFIES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided by the:

Contractors Professional and Pollution Liability Policy
Environmental Package Policy
Environmental Excess Policy
Site Pollution Liability Policy

It is agreed that this insurance does not apply to any circumstance, occurrence, suit, demand, or claim involving, caused by, resulting from or arising out of, either directly or indirectly, the following:

1.  any coronavirus
2.  any coronavirus exposure, or
3.  any illness resulting from coronavirus.

With respect to the above, we shall have no obligation to:

1.  pay any damages, loss, expenses, clean-up costs, medical expenses or any sums for bodily injury, medical monitoring, personal injury, advertising injury, property damage or business interruption or;
2.  defend any suit, demand or claim.

All other provisions of the policy remain unchanged.



## POLICYHOLDER DISCLOSURE

### NOTICE OF TERRORISM INSURANCE COVERAGE – TRIA DECLINED

This Notice is issued in accordance with the terms and conditions of the Terrorism Risk Insurance Act, as amended (the "Act").

You are hereby notified that coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the Act, as explained in the Policyholder Disclosure notice, (1) was made available to you; and (2) you declined or failed to confirm the purchase of such coverage. Therefore, this insurance does not provide coverage for losses directly resulting from any "act of terrorism" as defined by the Act except to the extent, if any, otherwise provided by this Policy.

### INSTRUCTION TO BROKER

You are instructed to deliver a copy of this notice to our insured.

*Includes copyrighted material 2015 National Association of Insurance Commissioners*

**IMPORTANT NOTICE CONCERNING**

**U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")**

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of the Policy. You should read the Policy and review the Declarations page for complete information on the coverages provided.

This Notice provides information concerning possible impact on the insurance coverage due to directives issued by OFAC. **Please read this Notice carefully**.

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". On an ongoing basis OFAC identifies and lists numerous individuals, entities and sanctions with respect to a particular country, including, but not limited to:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treasury.gov/offices/enforcement/ofac/.

In accordance with OFAC regulations, if it is determined that an Insured or any person or entity claiming the benefits of this insurance has violated U.S. sanctions laws or regulations or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to the laws and regulations administered and enforced by OFAC. When an insurance policy is considered to be a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments may also apply.

☐ **Scottsdale Insurance Company**
Home Office: One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office: 8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Surplus Lines Insurance Company**
Adm. Office: 8877 North Gainey Center Drive
Scottsdale, Arizona 85258

☐ **Scottsdale Indemnity Company**
Home Office: One Nationwide Plaza
Columbus, Ohio 43215
Adm. Office: 8877 North Gainey Center Drive
Scottsdale, Arizona 85258

# PRODUCTS LIABILITY APPLICATION

| | |
|---|---|
| Applicant's Name: ABC Industrial Services Inc | Agency Name: _____ |
| | Agent: _____ |
| Mailing Address: 1411 N. Magnolia Ave | Address: _____ |
| El Cajon CA 92020 | _____ |
| Location Address: 1411-1419 N. Magnolia Ave | E-mail: _____ |
| El Cajon CA 92020 | Phone: _____ |

**PROPOSED EFFECTIVE DATE: From** _____ **To** _____ 12:01 A.M., Standard Time at the address of the Applicant

ANSWER ALL QUESTIONS—IF THEY DO NOT APPLY, INDICATE "NOT APPLICABLE" (N/A)

**Applicant is:** ☐ Individual  ☒ Corporation  ☐ Partnership  ☐ Joint Venture
☐ Limited Liability Company  ☐ Other (Specify): _____

**Website Address:** abcindustrialservices.com

**E-mail Address:** abcindustrialservices@gmail.com  **Phone Number:** 619 519 1992

1. **Limit Desired:** _____

2. **Deductible Desired:** _____

3. **Completely describe product(s) to be specifically insured:** _____
_____
_____

4. **Location(s) at which product(s) are ~~manufactured~~ Recycled by the applicant:** See Mailing Address.
_____
_____

5. **Location(s) from which product(s) are distributed directly by the applicant:** "Same"
_____
_____

6. Of what materials or components is each product principally composed? *Concrete & Asphalt*

7. a. Does applicant compound ingredients? *Concrete & Asphalt* ............................................. ☑ Yes ☐ No
   b. Does applicant package the product? ............................................................................. ☐ Yes ☑ No

8. Are all products sold under the applicant's label? ............................................................ ☑ Yes ☐ No
   If not, describe: _____

9. Does applicant manufacture the product? ......................................................................... ☐ Yes ☑ No
   If no, what component parts are purchased? *Concrete & Asphalt is recycled together*

10. Is any of the applicant's work subcontracted to others? ................................................... ☑ Yes ☐ No
    If so, state type and percentage: *Processing of material done by 3rd party*

11. Are any parts purchased from foreign manufacturers? .................................................... ☐ Yes ☑ No
    If yes, describe: _____

12. Does applicant assemble the product? *See 9.* ............................................................. ☑ Yes ☐ No

13. a. Has the product been tested by Underwriters Laboratories? .................................... ☐ Yes ☑ No
    b. Is it UL listed? ........................................................................................................... ☐ Yes ☑ No

14. What percentage of sales are for replacement parts? ......................................... *0* %

15. Has the applicant's product ever been subject to any inquiry or investigation by any govern-
    mental agency concerning the efficiency, adequacy of labeling, hazardous contents or safety? ☐ Yes ☑ No
    If yes, attach full details and result of such inquiry.

16. Does applicant maintain and/or service the products? .................................................... ☐ Yes ☑ No
    If yes:
    a. Attach full details including copy of standard written service contract and gross receipts from this source.
    b. Does applicant maintain complete inventory records of shipments and/or deliveries to consignees? ☐ Yes ☐ No
    c. Can the date of manufacture of each product be identified by the factory number stamped on it?..... ☐ Yes ☐ No
    d. Has applicant ever recalled any of their products for any reason? .................................. ☐ Yes ☐ No
       If yes, attach details.
    e. Are serial and/or batch numbers shown on the finished product and on shipment invoices?............. ☐ Yes ☐ No
    f. Does applicant keep samples of products involved in quality control procedures? ............................ ☐ Yes ☐ No
       If yes, how long are samples retained? _____
    g. Does applicant have a products recall plan? ...................................................................... ☐ Yes ☐ No
       If yes, attach description.

17. Is original installation of products performed by the applicant's employees?....................... ☐ Yes ☑ No

18. If no, does the installer supply parts not manufactured by the applicant?........................... ☐ Yes ☑ No

19. Are any of the applicant's products subject to deterioration? ........................................... ☐ Yes ☑ No
    If yes, describe and indicate period of time: _____

20. Are any of the applicant's products inflammable or explosive? ............................................. ☐ Yes ☒ No
If yes, attach details.

21. Does applicant issue guarantees or warranties to purchasers? ............................................. ☐ Yes ☒ No
If so, for what periods does the applicant guarantee or warrant their products?
Attach full details and copy of applicant's form of guarantee or warranty.

22. Does applicant agree to hold dealers, distributors or suppliers harmless against claims or suits
for bodily injury or property damage in connection with the applicant's products? ....................... ☐ Yes ☒ No
If yes, attach copies of standard forms.

23. Are any of the dealers, etc., affiliated with the applicant? ................................................. ☐ Yes ☒ No
If yes, explain: _____
_____

24. If applicant is a distributor, is the applicant insured by the manufacturer? ............................. ☐ Yes ☒ No

25. Is the applicant's product used by the aircraft industry? ................................................... ☐ Yes ☒ No

26. a. How many years has the applicant been in business under the present name? ___6 mon___
b. Have any of the principals ever engaged in this or similar enterprises under a different
name? ......................................................................................................................... ☐ Yes ☒ No
If yes, attach details.

27. Does applicant plan to manufacture any new products to be marketed within the next
twelve (12) months? ......................................................................................................... ☐ Yes ☒ No
If yes, attach description.

28. Has applicant ceased to manufacture any products during the past five years? ....................... ☐ Yes ☒ No
If yes, attach description and sales by year.

29. If any products are accompanied by any written brochure, labels, instructions or other written statements,
attach copies.

30. Show sales for the past five years: (Attach list if necessary)

| NO. | YEAR | GROSS SALES | PRODUCT NAME |
|-----|------|-------------|--------------|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

31. What are the estimated sales for this year? $500,000 ~ 700,000.

32. Provide five years of claims history in following form or equivalent.

| NO. | CLAIMS PAID | | | RESERVES OPEN | | |
|-----|------|--------|--------|--------|--------|---------------|
| | YEAR | NUMBER | AMOUNT | NUMBER | AMOUNT | INSURER'S NAME |
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |

**33. Has any insurer ever canceled, nonrenewed, declined or refused to issue products liability insurance to the applicant?**................................................................................................................................ ☐ Yes ☑ No

If yes, why? _____

This application does not bind the applicant nor the Company to complete the insurance, but it is agreed that the information contained herein shall be the basis of the contract should a policy be issued.

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. **(Not applicable to Oregon.)**

**NOTICE TO ALABAMA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**NOTICE TO COLORADO APPLICANTS:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**WARNING TO DISTRICT OF COLUMBIA APPLICANTS:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

**NOTICE TO FLORIDA APPLICANTS:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**NOTICE TO LOUISIANA APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MAINE APPLICANTS:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

**NOTICE TO MARYLAND APPLICANTS:** Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**NOTICE TO MINNESOTA APPLICANTS:** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**NOTICE TO OHIO APPLICANTS:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**NOTICE TO OKLAHOMA APPLICANTS:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NOTICE TO RHODE ISLAND APPLICANTS:** Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**FRAUD WARNING (APPLICABLE IN VERMONT, NEBRASKA AND OREGON):** Any person who intentionally presents a materially false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.

**FRAUD WARNING (APPLICABLE IN TENNESSEE, VIRGINIA AND WASHINGTON):** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**NEW YORK AUTOMOBILE FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, and any person who, in connection with such application or claim, knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

**NEW YORK OTHER THAN AUTOMOBILE FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**APPLICANT'S STATEMENT:**

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true, and that these statements are offered as an inducement to us to issue the policy for which I am applying. (Kansas: This does not constitute a warranty.)

APPLICANT NAME AND TITLE: _Todd M. Nbbott, Esq._

APPLICANT'S SIGNATURE: _____   DATE: _9/17/21_

<span style="font-size:small">(Must be signed by active owner, partner or executive officer)</span>

PRODUCER'S SIGNATURE: _____   DATE: _____

AGENT NAME: _____   AGENT LICENSE NUMBER: _____

<span style="font-size:small">(Applicable to Florida Agents Only)</span>

IOWA LICENSED AGENT: _____

<span style="font-size:small">(Applicable in Iowa Only)</span>

# Exhibit "2"

4/19/25, 11:14 AM        Silver & Silver APC Mail - FW: Claim Number: BH 213380; Matter of Joseph Quartuccio and ABC Industrial Services, Inc.



Hershy Silver <hsilver@silverlawfirm.com>

## FW: Claim Number: BH 213380; Matter of Joseph Quartuccio and ABC Industrial Services, Inc.

1 message

**Eric Norvell** <enorvell@norvellfirm.com>                        Tue, Apr 15, 2025 at 3:34 PM
To: Hershy Silver <hsilver@silverlawfirm.com>

Hershy:

See below and attached.

Regards,

---

ERIC D. NORVELL, ESQ.

THE NORVELL FIRM

445 Marine View Ave., Suite 300

Del Mar, California 92014
(760) 452-0808 | F: (760) 454-3802

enorvell@norvellfirm.com

www.norvellfirm.com

**From:** Eric Norvell <enorvell@norvellfirm.com>
**Date:** Tuesday, April 15, 2025 at 11:09 AM
**To:** "daryl.gottilla@axiscapital.com" <daryl.gottilla@axiscapital.com>
**Subject:** Claim Number: BH 213380; Matter of Joseph Quartuccio and ABC Industrial Services, Inc.

Mr. Gottilla:

Please see attached documents supporting Mr. Quartuccio's claim for damages to his 2014 Navigator. As you know, Mr. Quartuccio was severely inconvenienced by loss of the navigator, and he has made claims for damages in accordance with the same. He was without use of the Navigator for many months, and he had to purchase another vehicle in the interim. The value of the Navigator has been diminished.

Mr. Quartuccio had previously demanded a settlement of $80,000.

Exhibit 2; Page 1

If you'd like to discuss further, please feel free to give me a call.


Regards,


—

ERIC D. NORVELL, ESQ.

THE NORVELL FIRM

445 Marine View Ave., Suite 300

Del Mar, California 92014
(760) 452-0808 | F: (760) 454-3802

ENORVELL@NORVELLFIRM.COM

WWW.NORVELLFIRM.COM


**3 attachments**

LIKE.NEW.AUTO.INVOICE.pdf
2986K

**Masterpiece Limousine.pdf**
77K

**Checks for Payment.pdf**
711K

**Like New Auto Body**
10147 Mission Gorge Rd, Santee, CA 92071-3869
Office: (619) 565-7511
alex41249@gmail.com

Estimate ID
22336512
Original

Owner
**Joseph James Quartuccio**
1120 pepper dr spc 137
el cajon, CA 92021
(619) 994-6151 (Mobile)

Appraiser
**Francisco Tello**
(619) 565-7511 (Mobile)
franciscojtello17@gmail.com

Classification
**None**

| Payer | Loss Type | Deductible | Reported Date |
|---|---|---|---|
| **Customer** | **Unknown** | **Unknown** | **10/29/2021** |

Loss Date
**10/29/2021**

Repair Facility
**LIKE**
10147 Mission Gorge Rd Ste
B3
Santee, CA 92071
(619) 565-7511 (Mobile)
franciscojtello17@gmail.com

---

## 2014 Lincoln Navigator L Base 4 Door Utility 131" WB 5.4L 8 Cyl Gas Injected Base 2WD

| Exterior Color | License | VIN | Condition |
|---|---|---|---|
| **UX** | **CA-PRIMO11** | **5LMJJ3H58EEL01654** | **Very Good** |

| Drivable | Odometer | Production Date | Mitchell Service Code |
|---|---|---|---|
| **No** | **87100** | **10/2013** | **910841** |

Primary Point of Impact
**Front (12)**

Options

| | | | | |
|---|---|---|---|---|
| Air Conditioning | Alum/Alloy Wheels | AM-FM Stereo | Anti-Lock Brake Sys. (ABS) | Auto Air Condition |
| Automatic Headlights | Auxiliary Input | Bluetooth Wireless Connectivity | CD Player | Cruise Control |
| Driver Seat With Power Lumbar Support | Driver-Front Air Bag | Dual A/C | Electric Defogger | Electronic Parking Aid |
| Electronic Stability Control | Exterior Memory Mirrors | First Row Bucket Seat | Fog Lights | Front Cooled Seats |
| Front Heated Seats | Front Seats With Power Lumbar Support | Genuine Wood Trim | Hard Drive | HD Radio |
| Heated Mirror | Heated Seats | High Intensity Discharge Headlights | Interior Automatic Day/Night Or Electrochromatic Mirror | Keyless Entry System |
| Leather Seats | Leather Steering Wheel | Left-Curtain Air Bag | Luggage Rack | Memory Seats |
| MP3 Player | Navigation Sys. | Passenger-Front Air Bag | Power Door Locks | Power Driver Seat |
| Power Folding Exterior Mirrors | Power Passenger Seat | Power Rear Liftgate | Power Remote Mirror | Power Running Board |
| Power Steering | Power Windows | Power-Adjustable Pedals | Premium Sound Sys. | Privacy Glass |
| Rain Sensing Wipers | Rear Audio Controls | Rear Gate Wiper | Rear Heating, Ventilation & Air Conditioning | Rearview Camera |

---

Exhibit 2; Page 3

**Options**

| | | | | |
|---|---|---|---|---|
| Remote Decklid Or Tailgate Release | Running Boards | Satellite Radio | Second Row Bucket Seat | Second Row Side Airbag With Head Protection |
| Side Airbags | Steering Wheel Mounted Audio Control | Theft Deterrent Sys. | Third Row Seat | Tilt Steering Wheel |
| Tire Pressure Monitoring System | Traction Control/Electronic | Trailer Hitch | Trip Computer | Universal Garage Door Opener |

---

**Joseph James Quartuccio | 2014 Lincoln Navigator L Base**

| Parts Profile | Parts Profile Version |
|---|---|
| Aftermarket | 7.0 |

| | | | | | LABOR | | | PART | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Line # | | Description | Operation | Type | Total Units | CEG | Type | Number | Qty | Total Price | Tax |

**Front Bumper**

| Line # | | Description | Operation | Type | Total Units | CEG | Type | Number | Qty | Total Price | Tax |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | AUTO | Frt Bumper Assy | Overhaul | Body | 2.8# | 2.8 | Existing | | | | |
| 2 | 004569 | Frt Bumper Cover | Remove / Replace | Body | INC# | 2.8 | New | 9L7Z 17D957 APTM | 1 | $722.52 | Yes |
| 3 | AUTO | Frt Bumper Cover | Refinish Only | Refinish | 2.9 C | 2.9 | | | | | |
| 4 | 000021 | Frt Bumper Rivet | Remove / Replace | Body | INC | 0.0 | New | * W704342 S300 | 1 | $8.50 | Yes |
| 5 | 000804 | Frt Bumper Grille | Remove / Replace | Body | INC# | 0.3 | New | 7L7Z 17B968 A | 1 | $218.92 | Yes |
| 6 | AUTO | Frt Bumper Cover | Remove / Install | Body | INC# | 1.3 | | | | | |
| 7 | 000024 | Frt Bumper Clip | Remove / Replace | Body | INC | 0.0 | New | * W709367 S438 | 1 | $5.65 | Yes |
| 8 | 004117 | Frt Parking Sensor Unit (4 @ $67.52) | Remove / Replace | Body | 0.4# | 0.1 | New | DA5Z 15K859 AAPTM | 4 | $270.08 | Yes |
| 9 | AUTO | Frt Parking Sensor | Refinish Only | Refinish | 0.5 C | 0.5 | | | | | |
| 10 | 000805 | Frt Bumper License Plate Bracket | Remove / Replace | Body | INC | 0.2 | New | 7L7Z 17A385 AA | 1 | $45.18 | Yes |
| 11 | 000806 | Frt Bumper Spoiler | Remove / Replace | Body | INC | 0.2 | New | 7L7Z 17626 AA | 1 | $51.88 | Yes |
| 12 | 004572 | Frt Bumper Impact Absorber | Remove / Replace | Body | INC | 0.0 | New | 9L7Z 17C882 A | 1 | $119.57 | Yes |
| 13 | 000025 | Frt Bumper Impact Bar | Remove / Replace | Body | 0.3# | 0.3 | New | CL1Z 17757 B | 1 | $208.63 | Yes |

**Front Lamps**

| Line # | | Description | Operation | Type | Total Units | CEG | Type | Number | Qty | Total Price | Tax |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 14 | 005933 | R Frt Combination Lamp | Remove / Replace | Body | INC | 0.5 | New | AL7Z 13008 A | 1 | $1,070.43 | Yes |
| 15 | AUTO | Headlamps | Check / Adjust | Body | 0.4 | 0.4 | | | | | |
| 16 | 005934 | L Frt Combination Lamp | Remove / Replace | Body | INC | 0.5 | New | AL7Z 13008 B | 1 | $818.33 | Yes |
| 17 | 000818 | R Headlamp Bulb | Remove / Replace | Body | INC# | 0.2 | New | 7L7Z 13N021 A | 1 | $190.00 | Yes |
| 18 | 000819 | L Headlamp Bulb | Remove / Replace | Body | INC# | 0.2 | New | 7L7Z 13N021 A | 1 | $190.00 | Yes |
| 19 | 006257 | R Headlamp Ballast | Remove / Replace | Body | INC# | 0.2 | New | BL7Z 13C170 A | 1 | $671.11 | Yes |
| 20 | AUTO | R Front Combination Lamp | Remove / Install | Body | INC | 0.3 | | | | | |
| 21 | 006258 | L Headlamp Ballast | Remove / Replace | Body | INC# | 0.2 | New | BL7Z 13C170 A | 1 | $671.11 | Yes |

Exhibit 2; Page 4

| Line # | | Description | Operation | Type | Total Units | CEG | Type | Number | Qty | Total Price | Tax |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 22 | AUTO | L Front Combination Lamp | Remove / Install | Body | INC | 0.3 | | | | | |
| 23 | 004757 | R Frt Combination Lamp Screw (2 @ $7.75) | Remove / Replace | Body | 0.0 | 0.0 | New | *W703277 S900 | 2 | $15.50 | Yes |
| 24 | 004758 | L Frt Combination Lamp Screw (2 @ $7.75) | Remove / Replace | Body | 0.0 | 0.0 | New | *W703277 S900 | 2 | $15.50 | Yes |
| 25 | 001399 | R Frt Fog Lamp | Remove / Replace | Body | INC# | 0.3 | New | 4F9Z 15200 AA | 1 | $62.93 | Yes |
| 26 | AUTO | Fog Lamps | Check / Adjust | Body | 0.4 | 0.4 | | | | | |
| 27 | 001400 | L Frt Fog Lamp | Remove / Replace | Body | INC# | 0.3 | New | 4F9Z 15200 AA | 1 | $62.93 | Yes |
| 28 | 001889 | R Frt Fog Lamp Bulb | Remove / Replace | Body | INC# | 0.2 | New | 2C5Z 13N021 AA | 1 | $31.17 | Yes |
| 29 | 001890 | L Frt Fog Lamp Bulb | Remove / Replace | Body | INC# | 0.2 | New | 2C5Z 13N021 AA | 1 | $31.17 | Yes |
| 30 | 001885 | R Frt Fog Lamp Bracket | Remove / Replace | Body | 0.0 | 0.0 | New | 7L7Z 15266 AA | 1 | $49.62 | Yes |
| 31 | 001886 | L Frt Fog Lamp Bracket | Remove / Replace | Body | 0.0 | 0.0 | New | 7L7Z 15266 BA | 1 | $49.62 | Yes |
| **Hood** | | | | | | | | | | | |
| 32 | 001893 | Hood Panel (Com) | Remove / Replace | Body | 1.5 | 1.5 | New | 7L7Z 16612 A | 1 | d$886.98 | Yes |
| 33 | AUTO | Hood Outside | Refinish Only | Refinish | 2.8 C | 2.8 | | | | | |
| 34 | AUTO | Add For Hood Underside | Refinish Only | Refinish | 1.4 C | 1.4 | | | | | |
| 35 | 001894 | Hood Insulator | Remove / Replace | Body | INC | 0.4 | New | 7L7Z 16738 A | 1 | d$107.50 | Yes |
| 36 | 001895 | Hood Insulator Retainer | Remove / Replace | Body | INC | 0.0 | New | *W706810 S439 | 1 | $3.25 | Yes |
| 37 | 001897 | R Frt Hood Stop Bumper | Remove / Replace | Body | 0.1 | 0.1 | New | *N811518 S | 1 | $11.30 | Yes |
| 38 | 001898 | L Frt Hood Stop Bumper | Remove / Replace | Body | 0.1 | 0.1 | New | *N811518 S | 1 | $11.30 | Yes |
| 39 | 001899 | Hood Striker | Remove / Replace | Body | INC | 0.2 | New | 7L1Z 16K689 A | 1 | $23.53 | Yes |
| 40 | 001900 | R Hood Hinge | Remove / Replace | Body | 0.3# | 0.3 | New | 7L1Z 16796 A | 1 | $47.27 | Yes |
| 41 | AUTO | R Hinge | Refinish Only | Refinish | 0.5 C | 0.5 | | | | | |
| 42 | AUTO | Hood Assy | Remove / Install | Body | INC | 0.5 | | | | | |
| 43 | AUTO | R Fender Assy | Remove / Install | Body | INC# | 1.6 | | | | | |
| 44 | 001901 | L Hood Hinge | Remove / Replace | Body | 0.3# | 0.3 | New | 7L1Z 16797 A | 1 | $42.42 | Yes |
| 45 | AUTO | L Hinge | Refinish Only | Refinish | 0.5 C | 0.5 | | | | | |
| 46 | AUTO | L Fender Assy | Remove / Install | Body | INC# | 1.6 | | | | | |
| 47 | 001887 | R Hood Hinge Reinforcement | Remove / Replace | Body | 0.0 | 0.0 | New | F85Z 16A598 AC | 1 | d$74.12 | Yes |
| 48 | 001907 | L Hood Adjuster | Remove / Replace | Body | 0.0 | 0.0 | New | 7L1Z 16758 A | 1 | $8.55 | Yes |
| 49 | 001910 | Hood Latch | Remove / Replace | Body | INC | 0.3 | New | 7L1Z 16700 A | 1 | $51.87 | Yes |

Exhibit 2; Page 5

| | | | LABOR | | | PART | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Line # | | Description | Operation | Type | Total Units | CEG | Type | Number | Qty | Total Price | Tax |
| 50 | 001912 | Hood Release Cable | Remove / Replace | Body | 0.6 | 0.6 | New | 7L1Z 16916 B | 1 | $27.17 | Yes |
| 51 | 001913 | Hood Release Cable Handle | Remove / Replace | Body | INC | 0.2 | New | 7L1Z 16916 AB | 1 | INC | Yes |
| **Cooling** | | | | | | | | | | | |
| 52 | 005371 | Upr Cooling Radiator Support (Mag) | Remove / Replace | Body | INC# | 1.5 | New | 9L1Z 16138 A | 1 | $479.45 | Yes |
| 53 | 006263 | Frt Weatherstrip | Remove / Replace | Body | 0.2 | 0.2 | New | 7L7Z 16A238 A | 1 | $10.05 | Yes |
| 54 | 006264 | Cooling Hood Latch Brace | Remove / Replace | Body | 0.2 | 0.2 | New | 2L1Z 16747 AA | 1 | $85.07 | Yes |
| 55 | 005372 | Lwr Cooling Radiator Support | Remove / Replace | Body | 8.8# | 8.8 | New | 9L1Z 16139 A | 1 | $257.60 | Yes |
| 56 | AUTO | Lwr Radiator Support | Refinish Only | Refinish | 0.8 | 0.8 | | | | | |
| 57 | AUTO | Add To R&R Mechanical Components -M | Remove / Replace | Mechanical | 1.3# | 1.3 | | | | | |
| 58 | AUTO | Evacuate & Recharge A/C -M | Remove / Replace | Mechanical | 1.4 | 1.4 | | | | | |
| 59 | 005373 | Upr Cooling Air Deflector | Remove / Replace | Body | INC | 0.4 | New | 9L7Z 19E525 AA | 1 | $118.33 | Yes |
| 60 | 005374 | Cooling Clip | Remove / Replace | Body | 0.0 | 0.0 | New | *N804837 S | 1 | $1.30 | Yes |
| 61 | 005379 | L Cooling Shield | Remove / Replace | Body | 0.0 | 0.0 | New | FL1Z 9E944 A | 1 | $32.17 | Yes |
| 62 | 005380 | Lwr Cooling Air Deflector | Remove / Replace | Body | INC | 0.5 | New | 7L1Z 8327 A | 1 | d$166.45 | Yes |
| 63 | 006266 | L Cooling Air Deflector | Remove / Replace | Body | INC | 0.0 | New | BL1Z 74001A06 A | 1 | $10.00 | Yes |
| 64 | 005381 | Cooling Radiator | Remove / Replace | Body | INC# | 2.7 | New | CL1Z 8005 A | 1 | $360.02 | Yes |
| 65 | 005385 | Cooling Radiator Filler Cap | Remove / Replace | Body | 0.0 | 0.0 | New | E9SZ 8100 A | 1 | $7.09 | Yes |
| 66 | 005386 | R Upr Cooling Insulator | Remove / Replace | Body | 0.0 | 0.0 | New | 7L1Z 8125 A | 1 | $17.43 | Yes |
| 67 | 005387 | L Upr Cooling Insulator | Remove / Replace | Body | 0.0 | 0.0 | New | 7L1Z 8125 A | 1 | $17.43 | Yes |
| 68 | 005388 | Upr Cooling Radiator Hose | Remove / Replace | Body | 0.1# | 0.7 | New | 9L3Z 8260 C | 1 | $68.18 | Yes |
| 69 | 005389 | Lwr Cooling Radiator Hose | Remove / Replace | Body | 0.1# | 1.3 | New | 9L3Z 8286 C | 1 | $123.45 | Yes |
| 70 | 005390 | Cooling Reservoir Cap | Remove / Replace | Body | 0.0 | 0.0 | New | 9L3Z 8K103 A | 1 | $30.13 | Yes |
| 71 | 006173 | Cooling Fan Module | Remove / Replace | Body | INC | 1.7 | New | AL3Z 8C607 B | 1 | $345.45 | Yes |
| **A/C / Heater / Ventilation** | | | | | | | | | | | |
| 72 | 006269 | A/C Condenser -M | Remove / Replace | Mechanical | INC# | 1.6 | New | AL1Z 19712 B | 1 | $352.73 | Yes |
| 73 | 000644 | Seal -M | Remove / Replace | Mechanical | 0.0 | 0.0 | New | 7L1Z 19E572 A | 1 | $12.95 | Yes |
| 74 | 005753 | Condenser Bracket -M | Remove / Replace | Mechanical | 1.0# | 1.0 | New | AL1Z 19702 A | 1 | $65.00 | Yes |
| 75 | AUTO | A/C Condenser -M | Remove / Install | Mechanical | INC# | 1.6 | | | | | |
| 76 | 006175 | A/C Compressor Assy -M | Remove / Replace | Mechanical | 1.1# | 1.1 | New | AL1Z 19703 B | 1 | $572.73 | Yes |

**Front Fender**

| | | | | LABOR | | | PART | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Line # | | Description | Operation | Type | Total Units | CEG | Type | Number | Qty | Total Price | Tax |
| 77 | 006271 | R Fender Panel | Remove / Replace | Body | 2.1# | 2.4 | New | FL1Z 16005 A | 1 | $576.02 | Yes |
| 78 | AUTO | R Fender Outside | Refinish Only | Refinish | 1.8 C | 2.2 | | | | | |
| 79 | AUTO | R Add To Edge Fender | Refinish Only | Refinish | 0.5 C | 0.5 | | | | | |
| 80 | 006272 | L Fender Panel | Remove / Replace | Body | 2.1# | 2.4 | New | FL1Z 16006 A | 1 | $625.40 | Yes |
| 81 | AUTO | L Fender Outside | Refinish Only | Refinish | 1.8 C | 2.2 | | | | | |
| 82 | AUTO | L Add To Edge Fender | Refinish Only | Refinish | 0.5 C | 0.5 | | | | | |
| **Windshield** | | | | | | | | | | | |
| 83 | 005084 | W/Shield Glass | Remove / Replace | Glass | 2.5# | 2.5 | New | AL1Z 7803100 B | 1 | $337.37 | Yes |
| 84 | 001827 | W/Shield Mirror Bracket | Remove / Replace | Body | INC | 0.0 | New | F7AZ 17698 BA | 1 | INC | Yes |
| 85 | 005087 | W/Shield Weatherstrip | Remove / Replace | Glass | INC | 0.2 | New | AL1Z 1503110 A | 1 | $74.48 | Yes |
| 86 | 004121 | W/Shield Garnish Cover | Remove / Replace | Body | INC | 0.0 | New | 9L3Z 17D550 A | 1 | $5.65 | Yes |
| 87 | 005954 | W/Shield Rear View Mirror | Remove / Replace | Body | INC | 0.2 | New | 8U5Z 17700 G | 1 | $229.82 | Yes |
| 88 | 003162 | R W/Shield Moulding | Remove / Replace | Body | INC | 0.2 | New | 7L1Z 7851692 A | 1 | $70.38 | Yes |
| 89 | 003163 | L W/Shield Moulding | Remove / Replace | Body | INC | 0.2 | New | 7L1Z 7851693 A | 1 | $54.75 | Yes |
| **Front Door** | | | | | | | | | | | |
| 90 | 002981 | R Frt Door Outside | Blend | Refinish | 1.1 C | 2.8 | Existing | | | | |
| 91 | 002982 | L Frt Door Outside | Blend | Refinish | 1.1 C | 2.8 | Existing | | | | |
| 92 | 002994 | R Frt Otr Door Belt Moulding | Remove / Install | Body | 1.1# | 1.1 | Existing | | | | |
| 93 | 002995 | L Frt Otr Door Belt Moulding | Remove / Install | Body | 1.1# | 1.1 | Existing | | | | |
| 94 | 002996 | R Frt Rear View Mirror | Remove / Install | Body | INC# | 0.8 | Existing | | | | |
| 95 | 002997 | L Frt Rear View Mirror | Remove / Install | Body | INC# | 0.8 | Existing | | | | |
| 96 | 006335 | R Frt Door Adhesive Moulding | Remove / Install | Body | 0.4r | 0.4 | Existing | | | | |
| 97 | 006336 | L Frt Door Adhesive Moulding | Remove / Install | Body | 0.4r | 0.4 | Existing | | | | |
| 98 | 001166 | R Frt Door Moulding Insert (Adhesive) | Remove / Install | Body | 0.2r | 0.2 | Existing | | | | |
| **Additional Costs & Materials** | | | | | | | | | | | |
| 99 | 936007 | Shop Materials | Additional Cost | | | | | | | $15.00* | Yes |
| 100 | 936008 | Paint/Materials | Additional Cost | | | | | | | $350.00* | Yes |
| 101 | 936010 | Caulking Materials | Additional Cost | | | | | | | $10.00* | Yes |
| 102 | 936012 | Hazardous Waste Disposal | Additional Cost | | | | | | | $5.00* | Yes |
| 103 | 936006 | Rust Coating | Additional Cost | | | | | | | $10.00* | Yes |

| Committed On | Version | | | | | | Page 5 of 7 |
|---|---|---|---|---|---|---|---|

Mitchell Estimating 24.5
OEM MAR_25_V

Mitchell Cloud Estimating™
Copyright 1994-2025 Mitchell International, Inc.
All Rights Reserved

Printed On
3/17/2025
10:35 AM

ProFile
System profile
ProFile Version
4.0

Exhibit 2; Page 7

| | | | | ———— LABOR ———— | | ———— PART ———— | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Line # | Description | Operation | Type | Total Units | CEG | Type | Number | Qty | Total Price | Tax |
| 104 936014 | Flex Additive | Additional Cost | | | | | | | $10.00* | Yes |
| 105 936016 | Weld Thru Primer | Additional Cost | | | | | | | $10.00* | Yes |
| 106 936015 | Cavity Wax | Additional Cost | | | | | | | $10.00* | Yes |
| 107 936003 | Coolant | Additional Cost | | | | | | | $35.00* | Yes |
| 108 936000 | Freon & Oil | Additional Cost | | | | | | | $150.00* | Yes |
| 109 936023 | Car Cover | Additional Cost | | | | | | | $5.00* | Yes |
| 110 936024 | Corrosion Protection Materials | Additional Cost | | | | | | | $5.00* | Yes |
| **Additional Operations** | | | | | | | | | | |
| 111 AUTO | Clear Coat | Additional Operation | Refinish | 3.8 | 0.0 | | | | $0.00 | |
| 112 933002 | Tint Color | Additional Operation | Refinish | 0.0 | 0.0 | | | | $2.00* | |
| 113 933005 | Restore Corrosion Protection | Additional Operation | Body | 1.0* | 0.0 | | | | $0.00 | |
| 114 933017 | Finish Sand And Buff | Additional Operation | Refinish | 5.0* | 0.0 | | | | $0.00 | |
| 115 933018 | Mask For Overspray | Additional Operation | Refinish | 1.0* | 0.0 | | | | $0.00 | |

* Judgment Item
T Included in Two Tone Calculation
# Labor Note Applies
d Discontinued by Manufacturer

C Included in Clear Coat Calculation
A Included in Clear Coat and Two Tone Calculation
r CEG R&R Time Used for this Labor Operation
[.] Verify the part number and price before ordering

## Estimate Totals

| Labor | Units | Rate | Sublet | Add'l Amount | Totals |
|---|---|---|---|---|---|
| Body Labor | 25.0 | $85.00 | | | $2,125.00 |
| Refinish Labor | 26.0 | $85.00 | | $2.00 | $2,212.00 |
| Glass Labor | 2.5 | $125.00 | | | $312.50 |
| Mechanical Labor | 4.8 | $150.00 | | | $720.00 |
| Total Labor | 58.3 | | | | $5,369.50 |

| | | |
|---|---|---|
| Taxable | | $5,369.50 |
| Tax 0.0000% | | $0.00 |
| Non-Taxable | | $0.00 |
| Pre-Tax Discount 0.00% | | $0.00 |
| **Labor Total** | | **$5,369.50** |

| Parts | Amount | |
|---|---|---|
| Taxable Parts | $11,982.49 | $11,982.49 |
| | Parts Adjustments | $0.00 |
| | Tax 8.2500% | $988.56 |
| | Non-Taxable | $0.00 |
| | Pre-Tax Discount 0.00% | $0.00 |
| | **Parts Total** | **$12,971.05** |

| Costs | Amount | |
|---|---|---|
| Paint Materials | $350.00 | $350.00 |
| Shop Materials | $15.00 | $15.00 |

Exhibit 2; Page 8

## Estimate Totals

| | | |
|---|---|---|
| Other Additional Costs | $250.00 | $250.00 |

| | |
|---|---|
| Taxable | $615.00 |
| Tax 8.2500% | $50.74 |
| Non-Taxable | $0.00 |
| Pre-Tax Discount 0.00% | $0.00 |
| **Costs Total** | **$665.74** |

| Gross Totals | Amount | |
|---|---|---|
| Gross Total | $19,006.29 | $19,006.29 |

| | |
|---|---|
| Taxable | $17,966.99 |
| Tax | $1,039.30 |
| Non-Taxable | $0.00 |
| Pre-Tax Discount 0.00% | $0.00 |
| **Gross Total** | **$19,006.29** |

| Adjustments | Amount | |
|---|---|---|
| **Total Customer Responsibility** | | $0.00 |

**Net Estimate Total**       **$19,006.29**

## Estimate Event Log

| | |
|---|---|
| **Job Created** | 3/17/2025 08:52 AM |
| **Estimate Started** | 3/17/2025 09:10 AM |
| **Estimate Printed** | 3/17/2025 10:35 AM |
| **Estimate Committed** | Estimate Not Committed |
| **Estimate Retrieval ID** | 1005154904 |

Exhibit 2; Page 9

# Masterpiece Limousine

1419 Broadway El Cajon, CA 92021
Tel: (858) 483-5466
Email: info@masterlimos.com

| | |
|---|---|
| **Pick-up Date:** | **03/01/2022** |
| **Pick-up Time:** | **08:00 AM** |
| **Reservation#** | **84484** |

---

**Bill To:**
Joseph Quartuccio

1120 Pepper Drive
El Cajon, CA 92021

**Primary Passenger:**
Joseph Quartuccio
1120 Pepper Drive
El Cajon, CA 92021
Hm: Off#: Mb: (619) 994-6151

| Booked On: | 03/11/2025 05:54 AM |
|---|---|
| Arr. By: | |
| PO/Client #: | |

---

| # of Pax | Vehicle Type | Car(s) | Driver(s) |
|---|---|---|---|
| 1 | | | |

---

## Passenger & Routing Information

**Addtl. Passengers:**

PU: -- : Repair to 2014 Lincoln Navigator CA
ST: -- : Vin# 5LMJJ3H58EEL01654
ST: -- : Needed repairs to include Mechanical needs due to impact to front clip of vehicle
ST: -- : Body and Paint repairs to include all needed parts to bring vehicle to original condition. CA
ST: -- : Loaner Vehicle provided for period of 60 days at no Charge
ST: -- : Bill includes storage at $35 per day for 30 days CA

| Pmt Type | Status |
|---|---|
| | UNPAID |

### Charges & Fees

| Rate Description | Amount |
|---|---|
| Flat Rate: | 19,006.20 |
| Per Hour: (1 x 2,332.89) | 2,332.89 |
| Per Unit: (30 x 35.00) | 1,050.00 |
| Trip Total | 22,389.09 |
| Total Outstanding | 22,389.09 |

---

## Notes/Comments

**Trip Notes:** Mechanical Needs included Recharge AC System, R&I new condenser and High Pressure lines, New Radiator and fluids, new transmission lines and cooler. Vehicle repair completed in quickest possible time, please be aware of back order on many parts due to Covid 19 backlash.
**Pax Notes:**

---

## Reservation Agreement

1. All deposits are NON refundable. 2. Masterpiece Transportation LLC, is not liable in the event of mechanical breakdown while on charter and will only be responsible for making up lost time at a mutually agreed date. The client assumes full financial liability for any damage to the limousine caused during the duration of the rental by them or any members of their party. A fee of 100.00 for each carpet or seat burn. Sanitation fee is 500.00. Drug use is prohibited by law. Any fines will be paid for by the customer. The driver has the right to terminate run without refund (if there is blatant indiscretion on the part of the client(s)). It is Illegal to stand through the sunroof. Smoking is not permitted in our limousines. 4. Overtime pay will apply after the first 15 minutes of prearranged time described on the run sheet. 5. Not responsible for articles left in the limousine. 6. Balances to be paid to the driver on the run date before the beginning of the run. 7. Vehicles cannot be loaded beyond seating capacity.

Signature: _____    Date: _____

Exhibit 2; Page 10

| Date: 2022-01-25 | Bank: CBT | Sequence #: 01202201255353054028 |
|---|---|---|
| Account: 5790460173 | Serial: 003040 | Amount: $6,000.00 |
| TranCode: 751 | Routing # (RT): 122232109 | C/D: D |
| Dep Seq #: 0882208800004 | Item Type: DDA | BOFD: 322281578 | PID: 495 |

SECURITY FEATURES INCLUDE TRUE WATERMARK PAPER, HEAT SENSITIVE ICON AND FOIL HOLOGRAM

3040

PRIMO BUSINESS GROUP INC.
1120 PEPPER DR. #137
EL CAJON, CA 92021

CALIFORNIA BANK & TRUST
3787 AVOCADO BLVD, LA MESA, CA 91941
90-3210/1222

PAY TO THE ORDER OF    Eddie Elias    $ 6,000 00

SIX THOUSAND no/100    DOLLARS

MEMO 2014 Nav. Repair
To Eddie

AUTHORIZED SIGNATURE

⑈003040⑈ ⑆122232109⑆ 5790460173⑈

322281578    CCCU    01252022    100003001279310

>322281578< 01252022 100003001279310

| Date: 2022-10-31 | Bank: CBT | Sequence #: 01202210315353103909 |
|---|---|---|
| Account: 5790460173 | Serial: 002964 | Amount: $5,000.00 |
| TranCode: 751 | Routing # (RT): 122232109 | C/D: D |
| Dep Seq #:    1302213000004 | Item Type: DDA | BOFD: 322281578 | PID: 673 |

SECURITY FEATURES INCLUDE TRUE WATERMARK PAPER, HEAT SENSITIVE ICON AND FOIL HOLOGRAM.

**PRIMO BUSINESS GROUP INC.**
.1120 PEPPER DR. #137
EL CAJON, CA 92021

2964

**CALIFORNIA BANK & TRUST**
3767 AVOCADO BLVD. LA MESA, CA 91941
90-3210/1222

10/28/22

PAY TO THE ORDER OF   *Eddie Elias*                              $ 5000 00

*Five Thousand and no/100*                              DOLLARS

MEMO  *2014 Lincoln Nav.*          AUTHORIZED SIGNATURE

⑈002964⑈ ⑆122232109⑆ 5790460173⑈

Credit to Share Account
of within named payee
CALIFORNIA COAST CREDIT UNION

103122 1254 0004933 >322281578< CCCU

# Exhibit "3"

Eric D. Norvell, Esq. (309688)
The Norvell Firm
445 Marine View Ave., Suite 300
Del Mar, CA 92014
Telephone: (760) 452-0808
Facsimile: (760) 454-3802
E-mail:enorvell@norvellfirm.com

Attorneys for Plaintiff JOSEPH JAMES QUARTUCCIO

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

10/25/2024 4:08:25 PM

Clerk of the Superior Court
By M. Schwenke     ,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO – HALL OF JUSTICE

| | |
|---|---|
| JOSEPH JAMES QUARTUCCIO, an individual;<br><br>Plaintiff,<br><br>v.<br><br>ANTON'S SERVICE, INC., a California corporation; ABC INDUSTRIAL SERVICES, INC., a California corporation; ANTHONIOUS BOTTER, an individual; and DOES 1 THROUGH 50, inclusive;<br><br>Defendants. | CASE NO.    24CU019425C<br><br>COMPLAINT FOR:<br><br>1. NEGLIGENCE;<br>2. NEGLIGENCE PER SE;<br>3. NEGLIGENCE – PREMISES LIABILITY;<br>4. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;<br>5. FRAUD;<br>6. NEGLIGENT MISREPRESENTATION<br><br>DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff JOSEPH JAMES QUARTUCCIO ("Quartuccio" or "Plaintiff") and for causes of action against Defendants ANTON'S SERVICE, INC. ("ASI"), a California corporation; ABC INDUSTRIAL SERVICES, INC. ("ABC"), a California corporation; ANTHONIOUS BOTTER ("BOTTER"), an individual; and DOES 1 THROUGH 50, inclusive, (collectively hereinafter "DEFENDANTS") and each of them allege as follows.

\\

\\

\\

\\

1

**PARTIES**

2     1.     Plaintiff Quartuccio is an individual and at all times mentioned in this Complaint is

3  and was a citizen of the State of California and a resident of San Diego County, California.

4     2.     Defendant ASI is and was at all times mentioned in this Complaint a California

5  corporation with its principal office located at 8865 Winter Gardens Blvd., Lakeside, California

6  92040 in San Diego County, California.

7     3.     Defendant ABC is and was at all times mentioned in this Complaint a California

8  corporation with its principal office located at 1411 North Magnolia Avenue, El Cajon, California

9  92020 in San Diego County, California (hereinafter the "Premises").

10     4.     Defendant Botter is an individual and at all times mentioned in this Complaint is

11  and was a citizen of the State of California and a resident of San Diego County, California.

12     5.     The true names and capacities, whether individual, corporate, associate, or otherwise

13  of Defendants designated as DOES 1 THROUGH 50 inclusive are unknown to Plaintiff who therefore

14  sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to set forth such

15  Defendants' true names and capacities, together with the appropriate charging allegations, when the

16  same have been ascertained. Plaintiff is informed and believes and based thereon allege that

17  Defendants DOES 1 THROUGH 50, inclusive, were and are citizens of and/or qualified to do

18  business in the State of California and are responsible to Plaintiff thus far on the facts and theories

19  herein alleged.

20

**JURISDICTION AND VENUE**

21     6.     The Court has jurisdiction over this action because the principal places of business of

22  Defendant corporations ASI and ABC are in the State of California, County of San Diego

23     7.     Pursuant to California Code of Civil Procedure § 395.5, venue is proper in this Court

24  because the liability alleged in this Complaint arises in San Diego County and the principal places of

25  business of Defendant corporations ASI and ABC are situated in the County of San Diego.

26

**FACTUAL ALLEGATIONS**

27     8.     ABC is a concrete and asphalt recycling center located at 1411 North Magnolia

28  Avenue, El Cajon, California.

1   9.  During all times relevant to this Complaint, Plaintiff Quartuccio was employed by

2 Defendant ABC and was its Chief Financial Officer ("CFO").

3   10.  Defendant ASI was and is a construction contractor who provided labor and services

4 to operate at ABC, including labor and services required for the conversion of discarded concrete and

5 asphalt into useable aggregate base to be used in the construction of roadways and other projects, as

6 described further below.

7   11.  Defendant Botter was and is the owner and president of ASI and during all times

8 relevant to this Complaint directed and controlled the actions and conduct of ASI employees,

9 contractors, and agents, many of whom provided goods and services to ABC.

10   12.  At all times relevant to this Complaint, as part of its business, ABC received truckloads

11 of discarded concrete and asphalt building material from construction jobs throughout San Diego

12 County.

13   13.  ASI, an independent construction and demolition contractor working for ABC,

14 provided the services, equipment, and personnel to crush the truckloads of discarded concrete and

15 asphalt into useable Class 2 Aggregate Base[1] (hereinafter "Base").

16   14.  ASI and its personnel then hauled the Base from the immediate location of the

17 crushing to an area where construction crews and other contractors could, for a price to be paid to

18 ABC, load required amounts of Base onto trucks for their own projects elsewhere. That area formed

19 a pile comprised of Base from which contractors' trucks would be loaded.

20   15.  In or around September of 2021, Botter directed employees of ASI to build a wall to

21 be constructed out of interlocking "V blocks," also known as V-lock blocks, V-interlock blocks, or

22 V-channel blocks. Hereinafter in this Complaint, said blocks will be referred to as "V blocks."

23   16.  Each V block was approximately 2 feet high by 2 feet wide by 6 feet long and weighed

24 approximately 3,500 pounds per block.

25

26

---

27 [1] Class 2 Aggregate Base (hereafter "Base") is a type of crushed aggregate material commonly used as a base layer for roads, driveways, parking lots, and sidewalks, composed of a mixture of crushed

28 stone, sand, and gravel, designed to compact well and provide a stable foundation for further construction.

1    17.    Upon information, Botter and ASI's intention in building the V block wall (the

2    "Wall") was to provide a buffer zone, i.e., a "containment," between the ever-increasing pile of Base

3    and areas into which it threatened to spill over, namely the offices of ABC, the ABC parking area

4    along Magnolia Avenue in El Cajon, and potentially onto Magnolia Avenue itself.

5    18.    Botter is not an engineer, nor does he have engineering training sufficient to take on

6    the construction of the Wall, nor upon information does any another employee or contractor of ASI

7    that was involved in the building of the Wall on the Premises.

8    19.    Indeed, Botter and ASI hastily, haphazardly, and without due/reasonable care

9    constructed the Wall with V blocks, which were simply "stacked" rather than constructed with any

10   concern for soundness.

11   20.    Notably, the reason that the pile of Base continued to increase in size was due to ASI's

12   failure to comply with federal, state, and local ordinances, regulations, and statutes. including but not

13   limited to OSHA regulations.

14   21.    Botter and ASI built the Wall to be approximately 50 feet long, stacking the V blocks

15   three-blocks (approx. six feet) high.

16   22.    Over approximately the next month, ASI continued to move crushed Base from the

17   crusher onto the pile, which increased in size so much that the pile began to exceed limits as regulated

18   by government authorities.

19   23.    As a result of its ever-increasing size, the Base pile exerted pressure against the

20   negligently constructed V block wall.

21   24.    ASI employees also negligently operated the Caterpillar 950M wheel loader ("Wheel

22   Loader") that was used to move Base from the pile to customer contractors' trucks. Specifically, ASI

23   employees would repeatedly slam the Wheel Loader at great force against the pile, directing

24   additional pressure against the Wall. The Wheel Loader weighed more than twenty (20) tons unloaded

25   and several more tons when loaded with Base.

26   25.    On October 29, 2021, Quartuccio drove his 2014 Lincoln Navigator ("Navigator") to

27   work at the Premises and parked it outside the Premises along the perimeter formed by the Wall.

28

26.    On that day, one of ASI's employees, an operator named "Weston," continually and repeatedly slammed the Wheel Loader against the pile of Base in conducting work for ASI.

27.    The force of the Wheel Loader, coupled with the underlying mass and weight of the pile of Base itself and the negligent construction of the Wall, resulted in the Wall collapsing and crushing Quartuccio's Navigator.

28.    After the collapse of the Wall, Quartuccio lost use of his vehicle for several months and was forced to seek alternate means of transportation while repair to the vehicle was sought. The repair period was significant due to the global impact of Covid-19 on the global supply chain and businesses in general.

29.    The absence of a vehicle caused significant inconvenience to Quartuccio.

30.    Upon collapse of the wall, Botter told Quartuccio that he "would take care of it."

31.    Botter also stated that he did not want to make a claim through his insurance carrier because the insurer would "audit the company" (meaning ASI) and that Botter could not afford that.

32.    Botter did not "take care of it" and instead attempted to blame Quartuccio for the clear negligence of ABC and ASI. This is likely because Botter's fear of an audit is well-founded, as Botter has flouted laws governing his business and has dealt dishonestly with his business partners, including Quartuccio, throughout the years.

33.    Consistent with his dishonest dealings, Botter and ASI falsely alleged that Quartuccio designed and built the Wall (i.e., "engineered it").

34.    Quartuccio learned of this falsehood in a letter dated November 1, 2022 from ASI's insurer, Crum & Forster, after Quartuccio submitted a claim based on the damage caused to the Navigator.

35.    In that November 1st letter, Crum & Forster denied coverage, concluding that ASI was "not negligent" based upon the false statements of ASI and its employees and affiliates.

36.    ASI and its employees and affiliates asserted, falsely, that Quartuccio was "involved and responsible for the construction of the containment area that ultimately collapsed."

37.    These falsehoods by Botter and ASI in turn caused Quartuccio to not receive payment to repair the damage to the Navigator.

**FIRST CAUSE OF ACTION**

**NEGLIGENCE**

**(Against Defendants ASI and DOES 1-50)**

38.   Plaintiff re-alleges and incorporates herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

39.   ASI had a duty to exercise reasonable/due care in:

   a.   designing, "engineering," and building the Wall;

   b.   managing its employees who operated the Wheel Loader that moved Base to and from a large pile on the Premises;

   c.   ensuring that the large pile of Base was regularly reduced to a reasonable size and cleared out regularly;

40.   ASI breached its duty to exercise due/reasonable care by:

   a.   Improperly, inadequately, and unsafely designing, engineering, and building the Wall;

   b.   permitting its employees to slam the Wheel Loader repeatedly against and onto the pile of Base that abutted and exerted pressure against the Wall;

   c.   failing to ensure that the large pile of Base was regularly reduced to a reasonable size and cleared out regularly in compliance with state and local regulations and ordinances, thereby increasing pressure against the already negligently constructed Wall;

41.   As a result of ASI's breach of its duty of care, the Wall collapsed onto Quartuccio's Navigator.

42.   ASI's negligence proximately and actually caused Quartuccio's Navigator be crushed under the collapsed Wall, causing Quartuccio to suffer special and general damages, including but not limited to cost of repair of the Navigator, deprivation of use of the Navigator, cost of acquisition of alternate means of transportation, devaluation of the Navigator, severe and serious inconvenience damages, and mental and emotional distress.

1   43.   ASI acted in such conscious disregard of Plaintiffs rights and safety, Plaintiff is

2   entitled to punitive damages to punish ASI and to deter such conduct in the future, in an amount to

3   be determined at trial.

4                              **SECOND CAUSE OF ACTION**

5                                **NEGLIGENCE PER SE**

6                          **(Against Defendants ASI and Does 1-50)**

7   44.   Plaintiff re-alleges and incorporates herein and by reference each and every previous

8   and subsequent allegation as though fully set forth herein.

9   45.   ASI had a duty to exercise reasonable/due care in ensuring that the large pile of Base

10  was regularly reduced to a reasonable size and cleared out regularly in compliance with state and

11  local regulations and ordinances.

12  46.   ASI breached its duty to exercise due/reasonable care by failing to ensure that the large

13  pile of Base was regularly reduced to a reasonable size and cleared out regularly in compliance with

14  state and local regulations and ordinances, thereby exerting pressure against the already negligently

15  constructed Wall.

16  47.   ASI's breach of its duty to exercise due/reasonable care proximately and actually

17  caused Quartuccio's Navigator be crushed under the collapsed Wall, causing Quartuccio to suffer

18  special and general damages, including but not limited to cost of repair of the Navigator, deprivation

19  of use of the Navigator, cost of acquisition of alternate means of transportation, devaluation of the

20  Navigator, severe and serious inconvenience damages, and mental and emotional distress.

21  48.   ASI acted in such conscious disregard of Quartuccio's rights and safety, Quartuccio

22  is entitled to punitive damages to punish ASI and to deter such conduct in the future, in an amount to

23  be determined at trial.

24  \\

25  \\

26  \\

27  \\

28  \\

**THIRD CAUSE OF ACTION**

**NEGLIGENCE - PREMISES LIABILITY**

**(Against Defendant ABC and Does 1-50)**

49.　Plaintiff re-alleges and incorporates herein and by reference each and every previous and subsequent allegation as though fully set forth herein.

50.　ABC leased the Premises upon which the Wall was built.

51.　As lessor of the Premises, ABC had a duty of due/reasonable care to maintain the Premises in a reasonably safe condition, including to ensure that the Wall was properly and safely designed, engineered, and built; that the pile of base was properly maintained and did not exert pressure on the negligently built wall; and that ASI and its employees did not create a hazard to persons and property on the Premises by repeatedly and continually slamming the Wheel-Loader into the pile of Base and exerting additional pressure against the negligently constructed wall.

52.　ABC breached its duty of due/reasonable care to keep the Premises in a reasonably safe condition, and ABC failed to use reasonable care to discover and/or to repair, replace, or give adequate warning with respect to the Wall, which collapsed and damaged Quartuccio's Navigator.

53.　ABC also breached its duty of due/reasonable care to keep the Premises in a reasonably safe condition by:

　　　a.　permitting ASI to design, engineer, and build the Wall improperly, inadequately, and unsafely and without reasonable care or in compliance of the law, which in turn created an unreasonable risk of harm;

　　　b.　failing to properly regulate the pile of Base that continued to increase in size and to exert extreme pressure on an inadequately and negligently built wall;

　　　c.　failing to regulate and control the operation of a twenty-ton wheel loader by ASI and its employees that repeatedly and continually slammed into the pile of Base, creating additional pressure against the negligently constructed wall.

54.　ABC's breach of duty of due/reasonable care proximately and actually caused Quartuccio's Navigator be crushed under the collapsed Wall, causing Quartuccio to suffer special and general damages, including but not limited to cost of repair of the Navigator, deprivation of use

1  of the Navigator, cost of acquisition of alternate means of transportation, devaluation of the

2  Navigator, severe and serious inconvenience damages, and mental and emotional distress.

3      55.    ABC acted in such conscious disregard of Quartuccio's rights and safety that

4  Quartuccio is entitled to punitive damages to punish ABC and to deter such conduct in the future, in

5  an amount to be determined at trial.

6  **FOURTH CAUSE OF ACTION**

7  **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

8  **(Against Defendants ASI, Botter and Does 1-50)**

9      56.    Plaintiff re-alleges and incorporates herein and by reference each and every previous

10  and subsequent allegation as though fully set forth herein.

11      57.    Quartuccio filed a claim against ASI's liability insurance policy to cover the damage

12  that was caused by ASI's negligence with respect to the Wall as set out in this Complaint and in

13  Counts I and II, *supra*.

14      58.    Under the facts set out in this Complaint, Quartuccio had a bona fide and legitimate

15  insurance claim that should have been covered and paid for by ASI's liability insurance carrier, Crum

16  & Forster.

17      59.    Botter knew that Quartuccio's insurance claim was bona fide and legitimate, but

18  rather than cooperate with the insurance carrier's investigation, Botter usurped the claim and

19  intentionally interfered with payment on the claim to Quartuccio by conveying a false narrative to

20  Crum & Forster.

21      60.    Specifically, during the period in which Crum & Forster performed its investigation

22  of Quartuccio's insurance claim, Botter, individually and on behalf of ASI, falsely represented to

23  Crum & Forster that Quartuccio had designed, "engineered," and constructed the Wall, when in fact,

24  Botter and ASI had designed, engineered, and constructed the Wall.

25      61.    Botter knew or should have known that such representation was false when he made

26  it, or he made the false representation recklessly and without regard for its truth.

27      62.    Additionally, Botter influenced others within and without ASI to represent the same

28  falsehood to Crum & Forster regarding Quartuccio and the building of the Wall.

9

63.     ASI and Botter's conduct was intended to disrupt the relationship between Quartuccio

and the insurer, Crum & Forster, and to cause a legitimate insurance claim by Quartuccio to be denied.

64.     The relationship was thus disrupted, and in turn, Crum & Forster denied Quartuccio's

legitimate claim and payment was withheld.

65.     In a denial-of-coverage letter of November 1, 2022, Crum & Forster admitted to

relying on the false representations of Botter and ASI as a basis for denial of the claim.

66.     Quartuccio learned of the false representations of Botter and ASI in the letter of

November 1, 2022.

67.     As a result of this disruption of the economic relationship between Quartuccio and

Crum & Forster, Quartuccio was harmed, as insurance coverage and payment thereunder were denied

for cost of repair of the Navigator, as well as reimbursement for associated expenses including but

not limited to deprivation of use of the Navigator, cost of acquisition of alternate means of

transportation, devaluation of the Navigator, severe and serious inconvenience damages, and mental

and emotional distress.

68.     ASI and Botter's conduct—including without limitation making false statements to

Crum & Forster during the course of an insurance investigation—was a substantial factor in causing

the aforementioned harm to Quartuccio.

69.     Botter and ASI acted with such conscious disregard of Quartuccio's rights that

Quartuccio is entitled to punitive damages to punish Botter and ASI, jointly and severally, and to

deter such conduct in the future, in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### FRAUD

### (Against Defendants ASI, Botter and Does 1-50)

70.     Plaintiff re-alleges and incorporates herein and by reference each and every previous

and subsequent allegation as though fully set forth herein.

71.     Quartuccio filed a claim against ASI's liability insurance policy to cover the damage

that was caused by ASI's negligence with respect to the Wall as set out in in this Complaint and in

Counts I and II, *supra*.

10

72.  Under the facts set out in this Complaint, Quartuccio had a bona fide and legitimate claim that should have been covered and paid for by ASI's liability insurance carrier, Crum & Forster.

73.  Botter knew that Quartuccio's claim was bona fide and legitimate, but Botter intentionally made false statements to Crum & Forster that he represented were true in order to usurp Quartuccio's insurance claim.

74.  Specifically, during the period in which Crum & Forster performed its investigation of Quartuccio's insurance claim, Botter, individually and on behalf of ASI, falsely represented to Crum & Forster that Quartuccio had designed, "engineered," and constructed the Wall, when in fact, Botter and ASI had designed, engineered, and constructed the Wall.

75.  Botter knew that such representation was false when he made it, or he made the false representation recklessly and without regard for its truth.

76.  Additionally, Botter influenced others within and without ASI to make the same false representation to Crum & Forster regarding Quartuccio and the building of the Wall.

77.  Botter and ASI made these false representations, and ASI ratified such representations, with the specific intent that Crum & Forster rely on them in order to interfere with Quartuccio's ability to recover under ASI's liability insurance policy and to cause a legitimate insurance claim by Quartuccio to be denied.

78.  Crum & Forster relied on the false representations of Botter and ASI, which led directly to the denial of Quartuccio's insurance claim.

79.  In a denial-of-coverage letter of November 1, 2022, Crum & Forster admitted to reliance on the intentionally false representations of Botter and ASI as a basis for denial of the insurance claim.

80.  Quartuccio was harmed, as the insurance claim and payment thereunder were denied for cost of repair of the Navigator, as well as reimbursement for associated expenses including but not limited to deprivation of use of the Navigator, cost of acquisition of alternate means of transportation, devaluation of the Navigator, severe and serious inconvenience damages, and mental and emotional distress.

1  81.   Crum & Forster's reliance on the intentionally false representations of Botter and ASI

2  was a substantial factor in causing Quartuccio harm.

3  82.   Botter and ASI acted with such conscious disregard of Quartuccio's rights that

4  Quartuccio is entitled to punitive damages to punish Botter and ASI, jointly and severally, and to

5  deter such conduct in the future, in an amount to be determined at trial.

6  ### SIXTH CAUSE OF ACTION

7  ### NEGLIGENT MISREPRESENTATION

8  **(Against Defendants ASI, Botter and Does 1-50)**

9  83.   Plaintiff re-alleges and incorporates herein and by reference each and every previous

10  and subsequent allegation as though fully set forth herein.

11  84.   Quartuccio filed a claim against ASI's liability insurance policy to cover the damage

12  that was caused by ASI's negligence with respect to the Wall as set out in in this Complaint and in

13  Counts I and II, *supra*.

14  85.   Under the facts set out in this Complaint, Quartuccio had a bona fide and legitimate

15  claim that should have been covered and paid for by ASI's liability insurance carrier, Crum & Forster.

16  86.   Botter, however, represented to Crum & Forster that Quartuccio had designed,

17  "engineered," and constructed the Wall.

18  87.   Botter's representation was false, as Botter and ASI had designed, engineered, and

19  constructed the Wall.

20  88.   Additionally, Botter influenced others within and without ASI to represent the same

21  falsehood to Crum & Forster regarding Quartuccio and the building of the Wall.

22  89.   Botter and ASI did not have reasonable grounds for believing that the

23  representations were true at the time they were made.

24  90.   Botter and ASI intended that Crum & Forster rely on the representations in processing

25  Quartuccio's insurance claim.

26  91.   Quartuccio reasonably relied on Crum & Forster to act in good faith and fairly

27  process the claim based on accurate information.

28

92.     Crum & Forster relied on the negligent misrepresentations of Botter and ASI, which led directly to the denial of Quartuccio's insurance claim.

93.     Crum & Forster admitted to reliance on the negligent misrepresentations of Botter and ASI as a basis for denial of the insurance claim.

94.     As a direct and proximate result of the negligent misrepresentations of Botter and ASI, Quartuccio was harmed, as the insurance claim and payment thereunder were denied for cost of repair of the Navigator, as well as reimbursement for associated expenses including but not limited to deprivation of use of the Navigator, cost of acquisition of alternate means of transportation, devaluation of the Navigator, severe and serious inconvenience damages, and mental and emotional distress.

95.     Crum & Forster's reliance on the negligent misrepresentations of Botter and ASI was a substantial factor in causing Quartuccio harm.

96.     Botter and ASI acted with such conscious disregard of Quartuccio's rights that Quartuccio is entitled to punitive damages to punish Botter and ASI, jointly and severally, and to deter such conduct in the future, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants, and each of them, for the following:

1.  Special damages, according to proof as set out above and as allowable by law;

2.  General damages, according to proof;

3.  Exemplary and punitive damages, according to proof;

4.  Attorneys' fees as allowable by law;

5.  Prejudgment and post-judgment interest as provided by law;

6.  Costs of suit incurred herein;

7.  For any other and further relief the court considers just and proper.

Dated: October 25, 2024

Eric D. Norvell, Esq., Attorney for PLAINTIFF
JOSEPH JAMES QUARTUCCIO

1    ## DEMAND FOR JURY TRIAL

2    Plaintiff Joseph James Quartuccio demands a trial by jury.

3    Dated: October 25, 2024

4    Eric D. Norvell, Esq. Attorney for PLAINTIFF
     JOSEPH JAMES QUARTUCCIO

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF JOSEPH JAMES QUARTUCCIO'S COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

# EXHIBIT B

# EXHIBIT B

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
11/12/2025 1:36:36 PM

Clerk of the Superior Court
By M. Ramirez        ,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
AXIS INSURANCE COMPANY, an Illinois corporation doing business in the State of California; AXIS SURPLUS INSURANCE COMPANY, an unknown Entity; and DOES 1 through 20, inclusive,
**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ABC INDUSTRIAL SERVICES, INC., a California Corporation,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: *(Número del Caso):* |
|---|---|
| *(El nombre y dirección de la corte es):* Superior Court of the State of California, County of San Diego, Central Division, 330 West Broadway, San Diego, CA 92101 | 25CU060777C |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Zvi "Hershy" Silver, CSBN 234855 Silver Law Firm, APC 401 W A ST 1150, San Diego, CA 92101; 619-231-1600

| DATE: *(Fecha)* November 12, 2025 | Clerk, by *(Secretario)* M. Ramirez | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* AXIS INSURANCE COMPANY, AN ILLINOIS CORPORATION DOING BUSINESS IN THE STATE OF CALIFORNIA

   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)       ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

# EXHIBIT C

# EXHIBIT C

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

11/20/2025 2:36:10 PM

Clerk of the Superior Court
By T. Automation    ,Deputy Clerk

ZVI 'HERSHY' SILVER, ESQ. SBN234855
SILVER LAW FIRM, APC
401 WEST A STREET, #1150
SAN DIEGO, CA 92101
619-231-1600
Attorney for: ABC INDUSTRIAL SERVICES, INC., ET AL.
Atty. File No.: 25CU060777C

SUPERIOR COURT OF CA., COUNTY OF SAN DIEGO
CENTRAL DIVISION-HALL OF JUSTICE

| | | |
|---|---|---|
| PLAINTIFF | : ABC INDUSTRIAL SERVICES, INC., ET AL. | Case No. : 25CU060777C |
| DEFENDANT | : AXIS INSURANCE COMPANY, ET AL. | **PROOF OF SERVICE OF SUMMONS** |

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of the SUMMONS; COMPLAINT; CIVIL CASE COVER SHEET; NOTICE OF CASE
    ASSIGNMENT AND CASE MANAGEMENT CONFERENCE; ADR PACKET;

3.  a. Party Served : AXIS INSURANCE COMPANY, AN ILLINOIS CORPORATION DOING BUSINESS IN THE
       STATE OF CALIFORNIA AUTHORIZED AGENT FOR SERVICE: CSC LAWYERS
    b. Person Served : ALEX JENKINS, ASSOCIATE INTAKE COORDINATOR
       (AUTHORIZED TO ACCEPT FOR CSC LAWYERS)

4.  Address where the party was served: 2710 GATEWAY OAKS DRIVE    SUITE 150N
       SACRAMENTO, CA 95833 (Business)

5.  I served the party
    a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
       receive service of process for the party (1) on November 13, 2025 (2) at: 12:30 PM

6.  The "Notice to the person served" (on the summons) was completed as follows:
    c. on behalf of: AXIS INSURANCE COMPANY, AN ILLINOIS CORPORATION DOING BUSINESS IN THE
       STATE OF CALIFORNIA
       under [xx] CCP 416.10 (corporation)

7.  **Person who served papers**
    a. KEIANNA HOSTETLER
    b. KNOX ATTORNEY SERVICE, INC.
       1550 HOTEL CIRCLE NORTH SUITE 440
       SAN DIEGO, CA 92108
    c. 619-233-9700

    d. Fee For Service : $ 182.15
    e. I am
       (3) a registered California process server
          (i) an independent contractor
          (ii) Registration No.: 2025-048
          (iii) County: SACRAMENTO

8.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date : November 14, 2025          Signature: _____

                                           KEIANNA HOSTETLER

Jud. Coun. form, rule 2.150 CRC
JC Form POS 010 (Rev. January 1, 2007)          **PROOF OF SERVICE**          Ref. No. : 0802904-01